**Penn Title Insurance Co. v. Intercounty Abstract, Ltd.**

*David Kraut,* for plaintiff.
*David E. Sandel, Jr.,* for defendant.

YOHN, *J.,* February 7, 1984—This is an action for declaratory relief filed by Penn Title Insurance Company (hereinafter Penn Title) against its former agent, Intercounty Abstract Ltd. (hereinafter Intercounty). Pursuant to an agency agreement entered into on March 15, 1979, plaintiff appointed defendant to solicit, accept and process applications for title insurance on behalf of plaintiff. Intercounty agreed to indemnify Penn Title for all losses sustained by plaintiff on account of errors and omissions in the examination of title by defendant or any abstractor whose work was not acceptable to plaintiff.

On April 1, 1981, plaintiff issued a title insurance policy to James and Therese Clark covering property located at 3221 Kennedy Road, East Norriton Township, Montgomery County, Pa. The Clarks had purchased the property from the prior owners, Howard and Marie Sherry and settlement was held on March 27, 1981. The title report and the resultant title insurance policy prepared by defendant failed to reveal that a judgment in the amount of $65,702.29 had been filed against Howard and Marie Sherry. The undisclosed judgment was a confession of judgment filed by Alexander McKenzie on March 25, 1981, at 3:50 p.m. in the Montgomery County Prothonotary's Office.[1]

Penn Title, pursuant to its contractual obligations to the Clarks, filed an action to quiet title against McKenzie[2]. The parties to that action entered into a stipulation on March 26, 1982, whereby Penn Title agreed to pay McKenzie $58,000 plus accrued interest. The present action, which by agreement of the parties incorporates the terms of the March 26, 1982 stipulation, is to determine Intercounty's liability to Penn Title under the agency agreement entered into by plaintiff and defendant. Essentially, the issue is whether the judgment filed by McKenzie on March 25, 1981, ripened into a lien prior to the conveyance of title at the March 27, 1981 settlement and whether, under the agency agreement, defendant is responsible to plaintiff for the loss to plaintiff resulting therefrom. It is the court's opinion that the answer to both of these

---

1. Captioned as McKenzie v. Howard and Marie Sherry, Civil Action No. 81-5230. Hereinafter referred to as the "McKenzie Judgment."

2. Captioned as Clark v. McKenzie, Civil Action No. 82-2474.

questions is in the affirmative and, therefore, defendant is obligated to indemnify plaintiff.

## FINDINGS OF FACT

1. Plaintiff, Penn Title Insurance Co., is a title insurance company located at 22 North Sixth Street, Reading, Pa.

2. Defendant is a Pennsylvania Corporation engaged as a title insurance agent and abstractor with its principal place of business at 618 Germantown Pike, Suite 144, Lafayette Hill, Pa.

3. Defendant, Intercounty Abstract Ltd., trading as International Abstract, was a title insurance agent for plaintiff at all times relevant hereto.

4. On March 15, 1979, plaintiff and defendant entered into a contract whereby plaintiff appointed defendant to, inter alia, solicit, accept and process applications for title insurance on behalf of plaintiff.

5. The contract between plaintiff and defendant provides in relevant part as follows:

2. AGENT SHALL:

". . . (c). Base the insurability of every title upon an examination of an abstract of title prepared by AGENT or for AGENT either by an abstracter whose work is acceptable to PENN or by any abstracter for whose errors and omissions AGENT will indemnify PENN."

6. The contract also provides:

6. "AGENT shall indemnify PENN for all loss, cost or damage which PENN may sustain or become liable for on account of: . . .

b. Errors or omissions in AGENT's abstracting or examination of title.

c. Errors or omissions by any abstracter whose work is not acceptable to PENN.

7. The agreement provided in substance that if defendant referred abstracting work to an abstractor

"whose work is acceptable to Penn," plaintiff would bear the risk of loss, and, if it was referred to any other abstractor, defendant would bear the risk of loss.

8. Intercounty engaged the services of Robert Chalphin Associates to perform the title abstracting services that were a necessary requisite to the transfer of title in the instant matter and to the issuance of a title insurance policy at settlement.

9. Chalphin Associates is a reputable and experienced abstractor which has been engaged in various facets of the title insurance business in Norristown, Pa. for many years.

10. Defendant, however, never advised plaintiff of the decision to engage the services of Chalphin Associates and plaintiff, therefore, never approved or accepted Chalphin's work.

11. On April 1, 1981, plaintiff issued a title insurance policy to James A. and Therese M. Clark for a property located at 3221 Kennedy Road, East Norriton Township, Montgomery County, Pa.

12. Settlement had been held on the property on March 27, 1981, at 9:00 a.m. at the offices of Red Hill Savings and Loan Association, Telford, Pa. The settlement was conducted by Robert Bischoff, President of defendant. As agent for plaintiff, defendant issued a "marked up" title report on the above-described property at the settlement and on which the title insurance policy was based which failed to reveal that a judgment in the amount of $65,702.29 had been filed against Howard W. and Marie D. Sherry, former owners of the property, under the caption Alexander McKenzie v Howard W. and Marie D. Sherry, Civil Action No. 81-5230, in Montgomery County, Pa.

13. The McKenzie judgment had been filed in the Office of the Prothonotary of Montgomery

County, Pa., at 3:50 p.m. on Wednesday, March 25, 1981.

14. The prothonotary's office generally observes the following sequence in the processing of newly filed judgments:

a. The judgment is handed to a clerk by the judgment creditor or his representative, whereupon the clerk reviews it to determine whether it is in proper form for filing and he or she immediately time stamps it with the time and date of filing.

b. The clerk who accepts the judgment for filing promptly places the judgment in a "scratcher box" along with other recently filed judgments to await further processing.

c. Thereafter, another clerk arranges the loose judgments in the "scratcher box" in the sequence in which they were filed, and he or she notes on what is commonly known as the "scratcher" or the "scratch sheet" the name of defendant, the name of plaintiff, the volume, and, if available, the page number of the general docket book in which the judgment will appear, the civil action number assigned to the matter by the prothonotary, the nature of the instrument in which the judgment appears, and the amount of the judgment.

d. After information concerning the judgment is noted on the "scratcher," another clerk takes the "scratcher" and makes the appropriate entries in the general docket book.

e. After the information is entered in the general docket book, yet another clerk takes the "scratcher" and makes the appropriate entries in the judgment index book.

f. After entry in the judgment index book, the information recorded therein is verified by still another clerk.

15. Richard Fair, First Deputy Prothonotary of Montgomery County since January of 1975, stated that the scratcher sheet is a temporary index and contains the same information as the permanent index known as the judgment index. He testified further that a judgment is placed on the scratcher sheet within 24 hours of the time that it is filed with the prothonotary and that in all probability the McKenzie judgment was entered on the scratcher sheet the morning of March 26, 1981.

16. Mr. Fair testified that the McKenzie judgment would have been entered on the general docket the same day as the scratcher sheet — Thursday, March 26, 1981.

17. Mr. Fair also testified that the McKenzie judgment would have been entered on the judgment index within one to four days after it was filed. The average time for a judgment to be placed on the judgment index is two days; however, the time can vary depending upon the amount of work and the number of judgments which are filed with the prothonotary's office at any given time. The date set forth in the judgment index is the date of filing, not the date of entry in the judgment index. Mr. Fair testified that no record is kept of the time or date of entering a judgment in the judgment index.

18. The judgment scratcher is an accurate chronological listing of all judgments filed with the prothonotary's office on a particular day. It is at all times available to the general public and title abstractors. The scratcher contains the names of the judgment creditor, the judgment debtor, the civil action number, the general docket number, the type of instrument upon which the judgment was entered and the amount of the judgment.

19. The information noted on the judgment index comes from the judgment scratcher, and the

judgment scratcher and the judgment index contain identical information. By checking the judgment scratcher, a title abstractor can receive notice that a judgment has been filed.

20. A "bring down" search is the final review of the prothonotary's and recorder of deeds' records to determine if there have been any intervening events which affect the title to be conveyed at a settlement between the time the original title abstract is prepared and the time of settlement. It is the generally accepted practice among title abstractors to do a settlement "bring down" as close in time as possible to the date of settlement. If a settlement is scheduled for 9:00 a.m., it is prudent and generally accepted among title abstractors to do a bring down search during the afternoon prior to the settlement.

21. The purpose of a "bring down" search is to update the information contained in the title report and to search for pertinent matters of public record that might have been filed after the cover date of the title report (here December 25, 1980) through the settlement date.

22. Gerald Kelly, title examiner for Chalphin Associates, testified that if there were any suspicions about the seller, he would check the scratcher sheet at the time of the "bring down" search and that defendant could have requested that this be done if any such suspicions were raised. The title report disclosed a pre-existing judgment against the husband-seller only which was not a lien against the real estate; however, because Robert Bischoff, President of defendant, was concerned about this judgment and the possibility that there might be a judgment against both husband and wife he had previously asked for a "bring down" in order to determine whether or not there was a judgment filed against both of the sellers. Kelly testified that he did

not usually check the scratcher sheet unless he had some suspicions about the seller as indicated above.

23. Tom Jones, a title officer for Commonwealth Land Title Insurance Co., testified that Commonwealth searches the judgment index only and does not search the scratch sheet in ordinary cases. He stated that this would be too time consuming and that Commonwealth assumes the risk inherent in not searching the scratch sheet.

24. Anthony Santangelo, owner of Germantown Title, and agent of plaintiff, testified that he does "bring down" searches to the day of settlement and that he checks the scratcher sheet on each "bring down" search. He also testified that the scratcher sheet is used by other title searchers and that he sometimes has to wait in line in order to review it.

25. Rosemarie Scanlon, a "bring down" searcher for the Title Insurance Co. of Pa., who has 18 years of experience in the title business, stated that she checked the scratcher sheet every time she had a settlement.

26. The ordering and performance of a "bring down" search on the afternoon before an early morning settlement is a proper and prudent practice consistent with generally accepted title insurance industry standards. A careful and prudent abstractor includes a review of the scratcher sheet as part of the "bring down" search, particularly where there are unusual circumstances arousing suspicions concerning the state of the seller's title.

27. As is defendant's routine practice and consistent with the custom in the title insurance business, defendant intended to order a "bring down" search from Chalphin Associates on the afternoon of March 26, 1981. Through a mixup between defendant and Chalphin Associates, a "bring down" search was never conducted.

28. The failure to perform a "bring down" search in the instant case was negligence. This negligent conduct was the proximate cause of the loss, as a "bring down" search in accordance with prudent and accepted practice would have discovered the McKenzie judgment.

29. Having issued a title insurance policy on the property located at 3221 Kennedy Road, East Norriton Township, Montgomery County, Pa., plaintiff was obligated to protect the title of its insured. In order to adjudicate the claims to this property plaintiff's insured filed an action to quiet title, captioned James A. Clark and Therese M. Clark v. Alexander McKenzie, Civil Action No. 82-2474, in Montgomery County, Pa.

30. Defendant was offered an opportunity to participate in the action to quiet title but declined to do so.

31. On March 26, 1982, after several conferences with the Honorable Anthony J. Scirica, Judge of the Montgomery County Court of Common Pleas, James and Therese Clark and Penn Title entered into a stipulation with Alexander McKenzie settling the action to quiet title. Pursuant to the stipulation, plaintiff agreed to pay $58,500 to Alexander McKenzie at the expiration of four years from the date of the stipulation plus interest during the intervening years.

32. Plaintiff had made one interest payment to Alexander McKenzie in the amount of $3,071.25 as of the date of trial.

33. Plaintiff incurred attorneys' fees and costs totaling $3,361.14 in prosecuting and settling the action to quiet title.

34. The statute applicable at the time of settlement was the Act of July 9, 1976, P.L. 586, No. 142,

§2, as amended, 42 Pa.C.S. §4303(a), which provided:

Effect of judgments and orders as liens.

(a) Real property. — Any judgment or other order of a court of common pleas for the payment of money shall be a lien upon real property on the conditions, to the extent and with the priority provided by statute or prescribed by general rule adopted pursuant to section 1722(b) (relating to enforcement and effect of orders and process) when it is entered of record and indexed in the office of the clerk of the court of common pleas of the county where the real property is situated, or in the office of the clerk of the branch of the court of common pleas embracing such county.

35. The words "and indexed" present in 42 Pa.C.S. §4303(a) had been added by the Act of October 5, 1980, P.L. 693, no. 142, §501(a). Prior to the 1980 amendment, 42 Pa.C.S. §403(a) read as follows:

Effect of judgment as lien.

(a) General rule. — Any judgment or other order of a court of common pleas for the payment of money shall be a lien upon real property situated in a county on the conditions, to the extent and with the priority provided or prescribed by statute or by general rule adopted pursuant to section 1722(b) (relating to enforcement and effect of orders and process) when it is entered of record in the office of the clerk of the court of common pleas of the county, or in the office of the clerk of the branch of the court of common pleas embracing such county. Any other order of a court of common pleas shall be a lien upon real and personal property situated within any county embraced within the judicial district on the conditions, to the extent and with the priority provided or

prescribed by statute or general rule adopted pursuant to section 1722(b).

36. The law prior to 1976 as set forth in 17 P.S. §1922 provided that in order to be a lien the judgment must have been recorded in a book to be called the "Judgement Index." The statute applicable at the time of settlement in the instant case does not refer to the "Judgment Index"; Section 4303(a) stated only that the judgment must be "indexed."

38. In view of the deletion of the requirement that the judgment be entered in "a book to be called the judgment index" as set forth in the 1856 statute, the legislature's omission of the words establishes an intent to adopt a more flexible method of notice of the filing of judgment liens. In light of this omission, the new statute should be construed according to the common meaning of the word "index" and according to the purposes of the recording acts.

39. The American Heritage Dictionary of the English Language (New College Edition 1980) defines "index" as "anything that serves to guide, point out or otherwise facilitate reference . . ."

40. The filing of the McKenzie judgment with the prothonotary and the entry of judgment in the general docket on March 26, 1981, constituted "entry of record" as required by 42 Pa.C.S. §4303(a).

41. The entry of judgment on the "scratcher sheet" on March 26, 1981, constituted "indexing" as required by 42 Pa.C.S. §4303(a).

42. The McKenzie judgment was a valid lien as of March 26, 1981. A careful and prudent title abstractor would have discovered the existence of that lien prior to 9:00 a.m. the following day.

43. Pursuant to paragraph 6 of the agency agreement, defendant is responsible to plaintiff for all

loss, cost or damage sustained by Penn Title on account of defendant's failure to discover the McKenzie lien.

44. Since Penn Title had an obligation to protect the title of its insured, the settlement of the action to quiet title, Civil Action no. 82-2474, was reasonable.

45. The Act of December 20, 1982, P.L. 1409, no. 326, known as the JARA Continuation Act of 1982, deleted the words "and indexed" from the relevant statutory provision in §4303(a). Section 404 of the JARA Continuation Act of 1982 expressly provided that the amendment to §4303(a) shall be retroactive to June 27, 1978.

46. The 1982 amendment to 42 Pa.C.S. §4303(a) has questionable effect on the case because of the provisions of 1 Pa.C.S. §1976(a):

"The repeal of any civil provisions of a statute shall not affect or impair any act done, or right existing or accrued, or affect any civil action pending to enforce any right under the authority of the statute replaced. Such action may be proceeded with and concluded under the statutes in existence when such action was instituted, notwithstanding the repeal of such statute . . ."

## DISCUSSION

The precise issue before the court is whether the recording of a judgment on the "Judgment Scratcher" or a "Scratcher Sheet" satisfies the indexing requirements of 42 Pa.C.S. §4303(a).[3] If the

---

3. Mr. Fair testified that, on the average, it takes one to four days for a judgment to be entered in the judgment index. Therefore, it cannot be said with any degree of certainty that the McKenzie judgment was recorded in the judgment index as of March 26, 1981.

scratcher sheet is an "index," then the McKenzie judgment was a valid lien as of March 26, 1981. The existence of a valid lien would then have obligated plaintiff to settle the action to quiet title, and, consequently, required defendant to indemnify plaintiff.

Defendant's position is that the "and indexed" language of the statute refers solely to the judgment index. Plaintiff contends that "index" should be construed according to its common meaning, namely as a means to facilitate reference. Pennsylvania case law on this issue is unavailing; neither plaintiff nor defendant has cited a case that squarely addressed whether the recording of a judgment on a "Scratcher Sheet" satisfies the requirement that a judgment be "indexed." The case of DePasquale v. Schwall, 62 Luz. L. Reg. 227 (1972) does not help to resolve the issue since the recording statute at that time specifically required that the judgment be indexed "in the judgment index." the statute applicable at the time of settlement in the instant case did not specifically refer to the "judgment index."

Plaintiff cites Trestrail v. Johnson, 297 Pa. 49, 146 Atl. 150 (1929), as support for the proposition that the terms "judgment scratcher" and "judgment index" have been used interchangeably. The court in Trestrail, while mentioning that the judgment scratcher contained the same information as the judgment index, did not address the precise issue before this court.[4] Similarly, the court in Coral

---

The court is cognizant of the retroactive effect of the JARA Continuation Act of 1982 upon §4303(a). However, the pre-existing statute controls if an action is pending to enforce rights existing under the statute. 1 Pa.C.S. §1976(a); Smith v. Fenner, 399 Pa. 633, 161 A.2d 150 (1960).

4. The court in Trestrail held that the entry of a judgment in the judgment scratcher and index was insufficient to create a valid judgment, since the applicable statute required entry in the "appearance docket." 297 Pa. at 58, 146 Atl. at 152.

Gables v. Kerl, 334 Pa. 441, 6 A.2d 275 (1939), did not determine the sufficiency of a "scratcher" as an "index." The Coral Gables decision held that minor discrepancies in the recording of the names of judgment debtors are insufficient to invalidate constructive notice of an otherwise valid lien.[5]

If the words of a statute are unclear, a court should attempt to determine legislative purpose. 1 Pa.C.S. §1921(a); Habecker v. Nationwide Insurance Co., 299 Pa. Super. 463, 445 A.2d 1222 (1982). The 1980 Amendment to 42 Pa.C.S. §4303(a) inserted the words "and indexed"; however, the legislature did not specifically refer to the "judgment index." The omission of the term "judgment index" is significant in that the omission reflects an intent to adopt a more flexible method of notice of the filing of judgment liens. A "change in the language of a statute ordinarily indicates a change in legislative intent." Scanlon v. Commonwealth Department of Transportation, 502 Pa. 577, 585, 467 A.2d 1108, 1112 (1983), quoting Masland v. Bachman, 473 Pa. 280, 374 A.2d 517 (1977). The logical inference to be drawn from the action of the legislature is that the term "indexed" should be construed according to its common meaning and usage. 1 Pa.C.S. §1903(a).[6]

The term "index" as defined in The American Heritage Dictionary (New College Edition 1980) means "to point out, guide or facilitate reference."

5. Coral Gables was also decided under the statute requiring recording in the "judgment index."

6. Defendant asserts that the term "indexing" has acquired a technical meaning, namely recording in the judgment index. However, to ascribe a technical interpretation to "indexing" in the instant case would beg the question, since the precise issue is whether documents other than the judgment index constitute "indexing."

The First Deputy Prothonotary of Montgomery County testified that the scratcher sheet contains the same information as the permanent judgment index. The scratcher can be viewed as a temporary index which serves as a record of judgments until the prothonotary's staff can enter the judgment on the judgment index. The scratcher is kept in the prothonotary's office and is available upon request. The adduced testimony indicates that experienced title abstractors are familiar with the scratcher and that the scratcher is usually checked as part of a "bring down" search. The fact that not all title searchers check the scratcher does not undermine the utility of the scratcher as a reference guide.

This court concludes that the time at which a judgment becomes a lien should not be dictated by the work schedule of the prothonotary in light of the existence of a record containing information identical to that contained in the judgment index. The McKenzie judgment therefore became a lien as of March 26, 1981.

Pursuant to the terms of the agency agreement, defendant is liable to plaintiff for all loss, cost or damage sustained by Penn Title on account of defendant's failure to discover the McKenzie lien. Plaintiff incurred costs in settling the action to quiet title. Since Penn Title had an obligation to protect the title of its insured, the settlement of that action was reasonable. Defendant is obligated, therefore, to indemnify plaintiff for all costs, loss or damages sustained by plaintiff.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the parties and this declaratory judgment action.

2. The judgment obtained by Alexander McKenzie became a lien against the property of Howard

and Marie Sherry on March 26, 1981, when it was recorded on the judgment scratcher and the general docket in the prothonotary's office.

3. The existence of the judgment scratcher satisfies the indexing requirement of 42 Pa.C.S. §4303(a) since the scratcher is a chronological index which sets forth the civil action number of a judgment, the parties to the judgment and the judgment's location in the general docket.

4. Since the judgment held by Alexander McKenzie constituted a valid lien upon the property located at 3221 Kennedy Road, East Norriton Township, Montgomery County, Pa., plaintiff was liable to the judgment holder by virtue of its title insurance policy with the purchaser of the property.

5. Pursuant to the terms of the agency agreement entered into by plaintiff and defendant, Intercounty is responsible for all loss, cost or damage sustained by Penn Title on account of defendant's error or omissions in the examination of title. A careful and prudent title searcher would have discovered the existence of the McKenzie judgment prior to 9:00 a.m. on March 27, 1981.

6. Plaintiff acted properly in agreeing to satisfy the judgment held by Alexander McKenzie in that the judgment constituted a valid lien against the property whose title it had insured pursuant to the contract between plaintiff and defendant.

7. Defendant is obligated to indemnify plaintiff in the amount of $58,500 plus $3,361.14 for attorneys' fees and costs in prosecuting the original action plus accrued interest paid pursuant to the March 26, 1982, stipulation, which amounted to $3,071.25 as of the date of trial, plus further interest as it becomes due.

## DECREE NISI

And now, this February 7, 1984, defendant Intercounty Abstract, Ltd. is ordered to indemnify plaintiff Penn Title Insurance Company in the amount of $58,500 plus attorneys' fees and costs of $3,361.14 plus interest paid to date of trial of $3,361.14 plus interest due and payable pursuant to the terms of the March 26, 1982, stipulation as it accrues and is paid.

Pursuant to Pa.R.C.P. 227.4, if a motion for post-trial relief is not filed within ten days from the notice of the filing of this adjudication and decree nisi, the decree nisi shall be entered by the prothonotary, upon praecipe, as the final decree of the court.

## FINAL DECREE

And now, this May 24, 1984, after oral argument before the undersigned and upon consideration of the briefs of counsel:

1. The findings of fact contained in the court's adjudication of February 7, 1984 are supplemented, as follows:

17. There was, therefore, no proof by a preponderance of the evidence that the McKenzie judgment was entered in the judgment index prior to the settlement of March 27, 1981; however, there was proof by a preponderance of the evidence that it had been entered in the judgment scratcher on March 26, 1981, and the court so finds.

19. The judgment index is also at all times available to the general public and title abstractors. All judgments are permanently entered therein in accordance with the Russell Code, a variation of alphabetizing.

2. The motion for post-trial relief is denied, except as aforesaid; the decree nisi shall be entered as the final decree, and the prothonotary shall, upon praecipe of a party, enter judgment upon the final decree.