UNITED STATES of America,
Plaintiff

v.

CODE PRODUCTS CORPORATION
et al., Defendants.

Civ. A. No. 23054.

United States District Court
E. D. Pennsylvania.

Jan. 28, 1963.

Drew J. T. O'Keefe, U. S. Atty., Philadelphia, Pa., James F. Shepherd, U. S. Atty., Tax Division, Washington, D. C., for plaintiff.

William Hagan, Philadelphia, Pa., for Internal Revenue Service.

Walter Stein, Philadelphia, Pa., for receiver.

Edward Greb Bauer, Jr., City Sol., Philadelphia, Pa., Harry Wolov, Asst. City Sol., Philadelphia, Pa., for City of Philadelphia.

Minturn T. Wright, III, Dechert, Price & Rhoads, Philadelphia, Pa., for Philip Price and Eli Kirk Price, III, Trs. u/w Eli Kirk Price.

Samuel Abramson, Philadelphia, Pa., for Herbert Scharf.

Milton H. Weissman, Stephen D. Rudman, Weissman & Kozart, Philadelphia, Pa., for Nicholas Lix.

Sol Spiegel, Spiegel & Highley, Philadelphia, Pa., for Sally Sheerr.

Joseph Alessandroni, Sr., Philadelphia, Pa., for Morgan J. Lewis.

Minturn T. Wright, III, Philadelphia, Pa., for Mildred C. Marshall and Edward E. Marshall, Jr., Trs. for Estate of Edward D. Marshall.

Marvin J. Levin, Freedman, Landy & Lorry, Philadelphia, Pa., for Robert Sheerr.

Walter E. Alessandroni, Atty. Gen., Commonwealth of Pennsylvania, Harrisburg, Pa., Morley W. Baker, Asst. Atty. Gen., Commonwealth of Pennsylvania, Harrisburg, Pa., Charles P. Mirarchi, Sr., Sp. Asst. to Atty. Gen., Philadelphia, Pa., for the Commonwealth.

KIRKPATRICK, District Judge.

The transactions which lie at the base of this controversy are rather complicated and I will not attempt to state more than such facts as appear to me to be necessary to its decision.

The proceeding is a civil action brought by the United States on August 7, 1957, for judgment against Code Products Corporation for outstanding federal tax assessments and for foreclosure, alleging the insolvency of the taxpayer. On August 27, 1957, the Court appointed a receiver to conserve and administer the taxpayer's assets during the pendency of the action.

The questions before the Court for adjudication relate to the order of priority of claims of the United States, the Commonwealth of Pennsylvania, the City of Philadelphia, Robert Sheerr, Sally Sheerr, Nicholas Lix, and Genevieve Stefanowicz.

The Government claims liens against all the assets. The earliest assessment of taxes for which it claims liens was on August 13, 1953. Notices of this and later assessments were filed in the prothonotary's office, as provided in 26 U.S.C. § 6323(a) (1), on May 11, 1954, October 15, 1954, and June 30, 1956. There is no dispute about the liability of Code Products for the taxes claimed.

In working out the order of priority of the claims, it will be convenient to deal separately with the various items of real estate and of personal property.

Real Estate Located at 4566 Baker Street

On the dates of the filing of the first two above mentioned notices of lien, title to this property was in Nicholas Lix, Jr., and unencumbered. Any rights which Code Products may have had in it had lapsed on January 8, 1954, as a result of Code Products' failure to carry out an agreement which it had with Lix to buy the property from him. At the time of filing the third of the above notices of lien, the title to the property was nominally in Dorothy Lewis.[1] It was then subject to a first mortgage of $100,000. to Mutual Trust Life Insurance Company placed by Dorothy Lewis and to a second mortgage for $9,791.46 to Lix. The first of these mortgages was subsequently purchased from Mutual, the mortgagee, on March 12, 1956, by the claimant, Sally Sheerr. She claims priority over the Government liens for the principal of the mortgage as well as for interest to the date of the present receivership, maintenance, attorney's fee, etc., amounting in all to $27,564.61. In addition, she claims the sum of $25,660 for interest accruing since the date of the receivership. Thus her total claim based on the mortgage is $153,224.61.

The question to be considered first is whether the federal liens have priority over the two mortgages just mentioned and, if so, to what extent.

The Government concedes priority of Mrs. Sheerr's mortgage to the extent of $55,204.95, plus interest, it being undisputed that that much of the proceeds of the mortgage was used to acquire the property, thus making the mortgage to

---

1. Dorothy Lewis is the wife of Morgan Lewis, who may be for all intents and purposes identified with Code Products.

that extent a purchase money mortgage. Lix's mortgage, on the other hand, was intended to secure payment of a balance due him entirely for advances of money, since it states expressly that it is not a purchase money mortgage.

The statute provides that federal taxes are a lien upon all "property and rights to property" belonging to the taxpayer but that the lien shall not be valid as against any mortgagee, etc., until notice thereof has been filed as thereafter provided. The lien arises when the assessment is made. In the present case the first two notices of assessments were filed prior to the mortgage. The third notice (June 30, 1956) was filed nearly a year and a half after the mortgage was placed and, although it contained as its first item an assessment of $4,779.65 made November 23, 1954, priority cannot be accorded as to any part of the tax covered in view of the express terms of the statute requiring that notice shall be filed before the lien of the assessment may be valid as against a mortgagee.

The claimant points out that Code Products does not appear in the chain of title to 4566 Baker Street until December 2, 1955, when the property was conveyed to it by Dorothy Lewis. It was, of course, at that time subject to the $100,000 mortgage which the Mutual Trust Life Insurance Company later sold to Sally Sheerr. However, it is perfectly plain that, when Dorothy Lewis took title on January 27, 1955, and on the same day executed the mortgage to Mutual, she was acting as nominee of and trustee for Code Products. So far as this proceeding is concerned, she was to all intents and purposes Code Products itself, being a mere straw party—a fact which was at the time known to Mutual. Thus her nominal and temporary ownership may be disregarded and the case treated as though Code Products had taken title to the property on January 27, 1955, and had given the mortgage.

■■ Inasmuch as liens for federal taxes attach to property acquired after the date of assessment as well as property owned at the time, the lien of the first two assessments (notices of which had been filed) attached to 4566 Baker Street on January 27, 1955. A person having statutory notice of the existence of federal tax liens may not, by the device of taking title in the name of a straw party, prevent those liens from attaching to real estate when it is acquired. Nor will the lien be subordinated to a mortgage (other than a purchase money mortgage) given at the time title vests to a mortgagee having knowledge of the fact that the nominal owner is a straw. In other words, a prospective mortgagee cannot achieve priority for his mortgage over properly filed federal tax liens by seeing to it that the prospective mortgagor takes title in the name of a straw party and then getting the mortgage from that straw party.

■ It therefore appears that, although the amount of principal representing proceeds applied to the purchase of the property ($55,204.95) together with interest takes priority over the federal tax liens, the balance of principal and interest is subordinate to the liens noticed, respectively, May 11, 1954, and October 15, 1954.

Sally Sheerr also seeks priority for a prepayment fee. I find no provision in the mortgage making such a fee part of the mortgage and, if it is in fact owed at all, I cannot find that it is secured.

■ The next item claimed is an attorney's fee, provided for in the mortgage in the case of foreclosure. This claim was inchoate when the last of the lien notices was filed since, though the mortgage was in default, the mortgagee had not elected to foreclose. Hence it is not entitled to priority over federal taxes.

■■ There are two claims for payment by the mortgagee of premiums to maintain fire insurance which became part of the mortgage by its terms when paid. The payment of December 21, 1955, is subordinate to the first two federal tax liens since it also was inchoate at the time of the mortgage. However, it is superior to the third tax lien filed June 22, 1956, since by that time it had

become choate. The exact date of payment of the second insurance premium claimed does not appear, but the mortgagee claims only three years interest so that I must assume that it was not paid before the filing of the notice of the third federal tax lien. It consequently is junior to all federal tax liens.

■ The claimant also contends that a $2,000 down payment and an $800 down payment, as well as certain expenses incurred in acquiring the land and obtaining the mortgage, should be treated as part of the purchase money. I cannot agree. The priority of the mortgage extends only to so much of the proceeds as represents money paid as part of the purchase price. No part of the proceeds of the mortgage was used to make the down payments.

As to the expenses, they are not part of the purchase price and, therefore, cannot be treated as though the mortgage was given to secure them.

■ The City of Philadelphia claims liens against the property in question (4566 Baker Street) for real estate taxes. These liens concededly attach on January 1 of the year for which each tax is levied. The taxes for 1955 are the earliest claimed against this property. This tax is superior to the federal liens. It attached on January 1, 1955, and, though the federal liens are older, they could not attach to the particular property involved before January 27, 1955, when it was purchased by Code Products through its nominee. Therefore, the rule of first in time, first in right applies. United States v. City of New Britain, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520.

■ As to the taxes for the years 1956 and 1957, the situation is different. The City is not within the class of persons protected against unnoticed federal tax liens and, hence, all taxes assessed prior to 1956 would be superior to the claims of the City for that year and all taxes assessed prior to January 1, 1957, would be superior to the City's tax lien for that year. The City's liens attaching during the receivership are administration expenses and prior to the federal liens.

■ The City also claims liens for water and sewer charges. The only evidence submitted to the Court as to this claim consisted of a tabulation of these charges, the amounts of which are not disputed. Here again the earliest claim is 1955. However, I cannot accord this claim priority over the federal liens for two reasons; first, the water liens are claimed for charges which accumulate in two steps, a base charge and an amount based on consumption above the minimum. In this situation, the amount could not have been determined prior to the termination of the period covered by the charge. Since the federal liens attached on January 27, 1955, it is manifest that the first in time, first in right principle would give the federal liens priority. The second reason is that the evidence before me does not show that the City has perfected its liens in accordance with 53 P.S. § 7183.

■ Municipal water and sewer charges arising after the receivership are administration expenses and are entitled to priority.

■ The Commonwealth of Pennsylvania claims for unpaid unemployment compensation fund contributions for the years 1951 to 1956, inclusive. These claims were reduced to judgment—four in 1954, one on January 25, 1955, two in 1957 and one in 1958. The Court of Appeals for the Third Circuit pointed out in Ersa, Inc. v. Dudley, 234 F.2d 178, that the lien of the Commonwealth prior to judgment was simply the notice of a more perfect lien to come and, therefore, was not such a lien as would be protected by the first in time, first in right principle. After judgment is entered, if that judgment would be a lien on the property, it will be regarded as choate and entitled to treatment in accordance with the first in time, first in right principle. As to the property here involved, the first five judgments were entered prior to Code Products' acquisition of it and were, therefore, not, under the law of Pennsyl-

vania, liens against it. The subsequent judgments were entered after all but two of the federal liens had been assessed. Since the Commonwealth is not protected against unnoticed federal tax liens, the judgments obtained in 1957 and 1958, though valid liens against the property, are not superior to the federal liens assessed before the dates of their entry but would be superior to assessments made after their entry. Unlike personal property, the lien of a judgment binds real estate upon its entry whether or not execution process has issued.

The Lix mortgage, as has been stated, was given to secure the balance due upon earlier advances to Mr. Lewis for the benefit of Code Products. Although the testimony is not altogether clear and is in part disputed, I am satisfied that Code Products was in possession of the building at the time it was conveyed to its nominee, Dorothy Lewis, (January 27, 1955) and I so find.

Under the law of Pennsylvania one loaning money upon a mortgage on real estate is chargeable with knowledge (in addition to what he could learn from official records) of " ' * * * what they (he) could have learned by inquiry of the person in possession and of others who, they (he) had reason to believe, knew of facts which might affect the title.' " Sidle v. Kaufman, 345 Pa. 549, 29 A.2d 77. In view of his rather extensive, close and evidently intimate business association with Mr. Lewis, I must hold that he had at the very least implied knowledge of the fact that Code Products was the real purchaser and party in interest and that Mrs. Lewis took title as its nominee and trustee. His claim (as well as that of the first mortgagee) must, therefore, be treated as though the conveyance had been made directly to the corporation. The result is that his mortgage is junior to the federal liens which had been noticed prior to the conveyance and which attached upon the conveyance, to the valid liens for taxes of the City of Philadelphia, and to the entire amount of the first mortgage, together with expenditures made thereunder in accordance

with its terms. It should be noted that there is no requirement that liens be choate in order to be asserted against a second mortgage.

As to the claim of the Commonwealth of Pennsylvania, the Pennsylvania statute (43 P.S. § 788.1) provides that the claim shall be reduced to judgment and execution shall be made in the normal manner. The courts have interpreted this provision as superseding the first sentence of the section, which referred to a lien for the taxes upon the filing of a notice thereof. It, therefore, appears that the law of Pennsylvania with respect to the lien of these claims is the same as it is with respect to the claim of any other judgment creditor. Therefore, the Lix mortgage would be prior to the judgment of the Commonwealth of Pennsylvania obtained in 1954 prior to its acquisition by Code Products.

### 4551 High Street

This property has been sold and the proceeds of the sale stand in its place. It is subject to a mortgage to Genevieve J. Stefanowicz recorded June 18, 1953. This mortgage together with interest thereon is entitled to priority in the fund over all other claims. The remainder of the claims, those of the federal government, state and municipal governments, must be disposed of on the first in time, first in right principle. Therefore, the Government's claim for federal taxes assessed prior to January 1, 1954, has priority over the City real estate tax which became a lien upon that date. As to the remainder of the claims—those of the federal government, state and city—I believe that enough has been said in connection with 4566 Baker Street to enable counsel to draw the decree in accordance with the principles set forth above.

### 4419 Baker Street

This property has been sold by the receiver and the proceeds in his hands stand in the place of the property. As to the claims against it, here, again, I believe that counsel will be able to draw a decree.

### 214–24 Kalos Street

■ This property was sold by the receiver for $27,000. Of this sum, $18,000 was used to discharge a ground rent on the property. In 1951 Nicholas Lix received a bond and mortgage in the amount of $25,000 upon the property. Thereafter, he advanced additional sums to Morgan Lewis and/or Code Products, making no distinction between the two, in a total amount exceeding $49,000, including interest. Payments were made to him from time to time up to January 27, 1955, amounting to $13,418.28. It is unnecessary for me to attempt to decide upon which specific debts these payments were to be applied. In any event, with the scanty evidence before me, such an undertaking would be futile. It is clear that on January 27, 1955, more than the amount of the proceeds of the property now remaining in the hands of the receiver ($9,000) was unpaid upon this mortgage, even if all payments made were intended to be credited upon it alone. On January 27, 1955, the mortgage was assigned by Nicholas Lix to the Mutual Trust Life Insurance Company as collateral security for the $100,000 mortgage on 4566 Baker Street. The settlement for 4566 Baker Street which occurred on that date did not accomplish a discharge of this mortgage. It is perfectly clear that it was the intention of all parties to keep the mortgage alive, and I know of no rule of law which would prevent that result simply because the Insurance Company, instead of going through the formality of drawing a check directly to Lix and receiving the assignment from him, allowed Code to use part of the proceeds of the $100,000 mortgage to procure Lix's assignment of the Kalos Street mortgage. As a matter of fact, the Government concedes the validity of the mortgage to the extent of the balance due on the debt. The latter mortgage and the collateral were subsequently assigned to the claimant, Sally Sheerr. I, therefore, conclude that, inasmuch as this Lix Mortgage antedates all the federal tax liens, Sally Sheerr, to the extent that her claim is not satisfied from the proceeds of 4566 Baker Street, would be entitled to a prior lien against the money which stands in the place of 214–24 Kalos Street.

The City of Philadelphia real estate taxes are to be treated in accordance with the first in time, first in right principle. The 1953 taxes are prior in time and right to the assessments for the federal taxes. Thereafter, the City's liens for real estate taxes will be inferior to the lien for federal taxes whenever the federal assessment was made prior to January 1 of the year for which the City taxes were levied. The taxes that became due after the receivership commenced are administrative expenses and are entitled to overall priority as such. The situation as to the City's claim for water and sewer rent is the same as that discussed in dealing with 4566 Baker Street and the same ruling is made here.

The Commonwealth claims became liens at the time the respective judgments were entered and will be treated in accordance with the first in time, first in right principle.

### Claims of Robert Sheerr

Robert Sheerr claims priority over the federal liens for money loaned to the trustees in bankruptcy and to Code Products. These loans fall into three categories.

■ First, authorized loans. On June 20, 1955, a petition under Chapter X of the Bankruptcy Act (the petition being later amended to seek relief under Chapter XI) was filed by Code Products and trustees were appointed. The Court authorized the trustees to borrow $30,000, the orders being silent as to priority of these loans over preexisting liens. Robert Sheerr lent the money to the trustees and it was used in the operation of the business as authorized by the Court. Trustees' certificates in the amount of $9,241.89 were given to Mr. Sheerr. Additional certificates were requested but never received. I am satisfied that Sheerr understood that he would ultimately receive certificates for the full amount authorized. This amount is en-

titled to priority, at least over general creditors, but it receives no priority over liens existing before the bankruptcy proceeding began. In order to establish his right to priority over preexisting liens a claimant must show either a specific and valid order of the Court or exceptional circumstances which would have led the Court to issue such an order. No such showing has been made here.

The second category is money lent to the trustees in excess of the amount which they were authorized to borrow. This money was also used in the operation of the business. As to it, Mr. Sheerr is not entitled to any priority. The claimant urges that he is entitled to some form of subrogation to the rights of the trustees because of these loans to them and the fact that when an arrangement under Chapter XI was made all of the assets of Code Products were turned over to him. These loans were voluntary in the truest sense of the word. The trustees had been authorized to borrow $30,-000. Mr. Sheerr lent them this sum and then, without authorization from the Court, supplied additional money to them, possibly with the hope that ultimately he would become the owner of the business. In certain cases the Court has applied the doctrine of subrogation when money has been lent voluntarily to discharge specific liens with the intention that the lender shall have the same security as the lien discharged. That is an exception to the general rule that subrogation cannot arise as a result of a voluntary advance. In the present case the requirements of the exception are not met. Moreover, it is difficult for me to understand just what right the trustees had which the claimant is attempting to assert.

The third category consists of advances in the form of loans made after the confirmation of the plan of arrangement on January 3, 1956, and before the receivership. As stated before, Robert Sheerr received all the assets of Code Products on that date. He entered into an agreement with Code Products by which he transferred the assets to it, taking back a financing and security agreement. Of course, these loans have no priority whatever and, as to them, Mr. Sheerr is a general creditor.

### Robert Sheerr's Claim to Machinery

Certain machinery belonging to Robert Sheerr and used by Code was included by the receiver in a lease which he made in 1958 when he leased the entire plant. He now claims that he is entitled, out of the receivership assets, to the fair rental value of the machinery.

There is no substantial dispute as to the fact that Sheerr was and has been at all times the owner of the machines. With the exception of two of them (a Spivy conveyor and a paint conveyor) they all appear on a list expressly agreed to by the Government as correct. Sheerr's claim to the two omitted from the list has not been challenged.

The only question here is as to the fair rental value of the machines. Expert testimony was taken upon this point and, although it is not as clear and satisfactory as it might be, I think it is sufficient to arrive at a figure of 2% of the fair market value of the machines per month.

Naturally, it is not even suggested that the Government liens apply to these pieces of machinery since they are not and never were the property of Code Products.

### Sally Sheerr—Chattel Mortgage

The claimant, Sally Sheerr, received, at the time of the assignment of the mortgage on 4566 Baker Street to her from the Mutual Trust Life Insurance Company, an assignment of a chattel mortgage executed by the predecessor of Code Products in favor of Nicholas Lix. The lien of this chattel mortgage has been lost by the failure of the mortgagee to re-file it in accordance with the law of Pennsylvania. See opinion of this Court filed in this case, dated November 7, 1960.

Sally Sheerr claims that the interest on the $100,000 mortgage on 4566 Baker Street, accruing during the time of the receivership, is entitled to be treated as

an administration expense, thus gaining for it the priority accorded administration expenses. This, in effect, would subject all of the assets of Code Products to the payment of the interest on a mortgage which covered but a single asset, namely, a piece of real estate. The interest due on the mortgage must take the same position as the lien of the mortgage itself and should not be accorded any different treatment than the principal of the mortgage. It is not a rent claim against the receiver and, if such treatment were allowed, I see no reason why any lienor could not come in and make the same claim.

An order in accordance with the foregoing may be submitted.