**In re Fred AMATO and Marjorie Amato, his wife, Debtors.**

**A. W. BECK, Trustee, Plaintiff,**

v.

**Marianne AMATO, Defendant.**

**Bankruptcy No. 80–00260–BKC–JAG–A. Adv. No. 80–0196–BKC–JAG–A.**

United States Bankruptcy Court, S. D. Florida.

March 18, 1981.

As Corrected April 16, 1981.

Chad P. Pugatch, Cooper, Shahady, Frazier & Pugatch, Fort Lauderdale, Fla., for plaintiff-trustee.

A. W. Beck, Plantation, Fla., Trustee.

Reggie David Sanger, Fort Lauderdale, Fla., for defendant.

Gary J. Rotella, Tamarac, Fla., for debtors.

## FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, . Bankruptcy Judge.

The trustee in this adversary brought an action against the daughter of the debtors to recover real property on the basis of either a preferential or a fraudulent transfer. The debtors filed their voluntary petition in bankruptcy on March 11, 1980.

Prior to 1978, the debtors, Onofrio Fred Amato and Marjorie Amato, husband and wife, entered into four separate contracts for deed with General Development Corporation. The properties purchased were unimproved lots, referred to as follows:

Lot 4, Block 561, Port St. Lucie

Lot 8, Block 594, Port Charlotte

Lot 5, Block 2682, Port St. Lucie

Lot 4, Block 2682, Port St. Lucie

Due to substantial medical problems and business reverses, the Amatos' income was reduced at a time when they had greatly increased debts and, therefore, in September, 1978, they obtained a three-month moratorium on the payment of these contracts. The Amatos were insolvent at least from this point through the time at which they filed their bankruptcy petition. Seeing that they would not be able to resume payments after the moratorium, the debtors asked their daughter Marianne Amato, the defendant in this case, to make the pay-

ments on their behalf. All parties intended that she would be repaid when the debtors were in a position to do so. In November or December, 1978, the defendant supplied to her parents the past due payments going back to September, 1978, and then continued providing the payments for all four properties on a monthly basis.

In March, Marianne Amato supplied the full balance on the contract for Lot 4, Block 561, Port St. Lucie. The debtors decided that, in return, they would transfer the deed to that lot to their daughter, and expressed this intention in a unilateral instrument dated March 16, 1979, in which they referred to the fact that she had "purchased" the property (Plaintiff's Exhibit No. 11). The defendant had not bargained for this property, but was simply informed after the fact that the debtors intended to transfer it to her. Prior to March, Marianne Amato had made seven payments of $27 each, totaling $189, on the account for this lot, and in March she paid the balance of $2,417. On April 25, 1979, the debtors received a warranty deed from General Development Corporation which was recorded on June 19, 1979 (Plaintiff's Exhibit No. 2). On December 1, 1979, the debtors executed a quitclaim deed to Marianne Amato, which was delivered to her only after it was recorded on December 11, 1979 (Plaintiff's Exhibit No. 4). There was only one witness to the execution of the deed.

As to the other three lots, the defendant continued making the monthly payments. On December 15, 1979, the debtors executed assignments to the defendant of the contracts for deed for each of the three lots (Plaintiff's Exhibits Nos. 6, 8 and 10). The defendant then made the monthly payments on the contracts to General Development Corporation for several months after the bankruptcy petition was filed, until she learned that the trustee was seeking to recover the property for the estate. Although the contracts have been cancelled by General Development Corporation for nonpayment, they are still within the reinstatement period.

■ The court concludes that the debtors' assignments of the contracts for the three lots to their daughter on December 15, 1979 constituted preferential transfers under 11 U.S.C. § 547. Each of the elements of § 547(b) is present as to the transfer of these three interests. (1) The transfers of the contracts for deed were made to a creditor, because the intent of the parties had been that the debtors would repay Marianne Amato for the monthly payments she provided. (2) The transfer was on account of this antecedent debt owed by the Amatos to Marianne and was not a contemporaneous exchange for new value given by her. (3) The transfer was made while the Amatos were insolvent. Since the transfer occurred within the ninety days immediately preceding the filing of the bankruptcy petition, the debtors are presumed to have been insolvent under § 547(f) and no evidence rebutting that presumption was presented at trial. In fact, all the evidence indicates that the debtors had been continuously insolvent for some period before that. (4) With the petition having been filed on March. 11, 1980, the transfers, which were completed upon execution by the debtors on December 15, 1979, were within ninety days before the filing of the petition. Had the transfer been completed in November, it would nevertheless have been a preference under the one year period for an insider of § 547(b)(4)(B) because the defendant, as the daughter of the debtors, was an insider under 11 U.S.C. § 101(2)(A)(i), and she had reasonable cause to believe that the debtors were insolvent at the time of the transfers. (5) Through these transfers the defendant received more than she would have received within the chapter 7 proceeding.

■ The court concludes that the execution of a quitclaim deed to Lot 4, Block 561, Port St. Lucie to the defendant was also a preferential transfer. Despite the "purchase" language in the March 16, 1979 instrument (Plaintiff's Exhibit No. 11) the court concludes that the document does not represent a contract between the debtors and the defendant, with delivery of the deed being performance by the debtors. Rather, the delivery of the deed was on

account of the antecedent debt totaling $2,606 which the Amatos owed their daughter for her payments on this particular contract.

Barring any defect in the deed, under § 547(e)(2), the "transfer" would have occurred on December 1, 1979 because the quitclaim deed to Marianne Amato was recorded on December 11, 1979, within 10 days after the transfer. However, because the deed had only one witness, under § 548, the transfer would be deemed to have occurred immediately before the date of the filing of the petition. Thus, the transfer was within ninety days before the filing of the petition. All other elements of a preference under § 547(b) existed, as with the assignments of the contracts for deed discussed above.

The requisite elements thus existing, the trustee may avoid the transfers to the defendant of the debtors' ownership of the contracts for deed for the three lots in Port St. Lucie and Port Charlotte and of the real property referred to as Lot 4, Block 561, Port St. Lucie. 11 U.S.C. § 550(d)(1) nevertheless gives to a good faith transferee a lien on property recovered to secure the lesser of the cost of any improvement made by the transferee after the transfer or any increase in value as a result of such improvement. The defendant here made payments to General Development Corporation on each of the three contracts for deed for approximately six months after the contracts were transferred to her. The present value of each of these contracts clearly has been increased, and in this case the cost to the defendant and the increased value to the debtors' estate are equivalent.

For purposes of § 550(d)(1), the court finds that the defendant was a good faith transferee. Cf. *Keates v. Register*, 74 F.Supp. 966 (E.D.Pa.1947) in which the trustee was able to set aside as a fraudulent conveyance a deed from the parent debtors to their daughter, but the court allowed the daughter a mortgage on the property in the amount of the payment she had made on her parents' mortgage after their conveyance of the property to her. Although Marianne Amato first took over payments on the contracts in the hope of preserving their value for her parents, and she would doubtless have returned the property to them upon their request, it was contemplated by the parties that she would do so only upon being paid. The court finds that the transfers were not made with the specific intention of removing them from the bankruptcy estate. By the avoidance of the transfers themselves, these properties are being recovered for the benefit of all creditors, as is proper. However, there is no reason for the estate to receive the windfall of the post-transfer payments to General Development Corporation which the defendant made while she believed the contracts to be hers. Therefore, Marianne Amato will have a lien on each contract to the extent of the payments she made on it after the assignment.

As required by B.R. 921(a), a separate Judgment incorporating these Findings and Conclusions is being entered this date.