In re Lester McLEAN and Frances McLean, Debtors.

Lester McLEAN, Frances McLean, Plaintiffs,

v.

CITY OF PHILADELPHIA, DEPT. OF REVENUE, Defendant.

Bankruptcy No. 88–11567F.
Adv. No. 88–2158F.

United States Bankruptcy Court, E.D. Pennsylvania.

March 20, 1989.

---

Cynthia E. White, Chief Asst. City Sol., Philadelphia, Pa., for defendant, City of Philadelphia, Dept. of Revenue.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 Trustee.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

Before me is a consolidated complaint and motion brought by the debtors, Lester and Frances McLean, seeking to avoid the City of Philadelphia's lien on their residential real property for unpaid prepetition water bills.[1] Debtors present alternate legal theories for relief: first, that the lien was not perfected as of the date of the bankruptcy petition filing and, therefore, is avoidable through the debtors' use of the trustee's powers under 11 U.S.C. § 544(a)(3) or 545(2); second, that the lien is a judicial lien which impairs the debtors' exemption and consequently is avoidable under section 522(f)(1) of the Bankruptcy Code. The City's position is that the lien was, in the first instance, properly perfected; moreover, it contends that its lien is statutory in nature, not judicial; it further argues that lien avoidance under §§ 544 or 545 is barred by the limiting terms of § 546(b). Finally, the City asserts that its position as a good faith transferee under § 550(d) entitles it to a lien on the subject property for the cost of improvement or preservation of the property.

The record consists of testimony and documents presented at trial along with a stipulation as to certain facts. In their posttrial submissions, the parties agree that the facts may be summarized as follows:

### I.

Debtors filed a joint chapter 13 petition in bankruptcy on May 5, 1988; Mr. McLean is the sole owner of their residence at 2058 E. Orleans Street, Philadelphia, where the debtors reside with their children.[2] At the time of the bankruptcy filing, the City held

Eric L. Frank, Community Legal Services, Inc., Philadelphia, Pa., for plaintiffs/debtors, Lester McLean and Frances McLean.

---

1. This is a core proceeding pursuant to 28 U.S.C. 157(b)(2)(K).

2. For the sake of convenience, this opinion will refer to the claims raised as those of the debtors, rather than of the debtor/husband only.

a claim for delinquent water bills in excess of $1,000.00. The City asserts that $516.65 is secured by a first lien, as it was filed (in the manner described below) on November 16, 1987 as lien No. 36805, C.P.Philadelphia, November Term, 1987.[3]

The procedure employed by the City for the filing of the lien with the Prothonotary is as follows: the City's Water Department prepares books setting forth its liens on properties throughout the city ("water lien books"). In these books, the Water Department designates the court term and number assigned to each lien, using "street-related account numbers" from its own computer printouts (Fact Stipulation 6(b)). These books are annually delivered to, and accepted for, docketing by the Prothonotary of Philadelphia County; the lien books are kept in the Prothonotary's Office, Room 262, City Hall, Philadelphia. The names of the property owners in these water lien books are not listed in alphabetical order, as they are in another set of books maintained by the Prothonotary, the judgment index; instead, the liens are listed only by the Water Department's docketing number. Liens contained in these water lien books likewise are not recorded in the judgment index, which is located in Room 268, City Hall, Philadelphia. The water lien book filed November 16, 1987 in the manner described above contains the lien against the subject real property, and was located in Room 262 on May 5, 1988, the date of debtors' bankruptcy filing.

At some point subsequent to the debtors' bankruptcy filing, the Prothonotary posted a sign in the Judgment Index Room (Room 268) advising the public that the "Water/Sewer In Rem Judgment Index," containing water/sewer liens, is located in Room 262 of City Hall (Fact Stipulation No. 8); this sign refers to the water lien books prepared by the Water Department and filed in Room 262 (including the one filed

November 16, 1987 containing the subject lien). Further, the water/sewer lien books in Room 262 were labelled, post-petition, "Water/Sewer In Rem Judgment Index."

As of the date debtors' filed their bankruptcy petition, the judgment index in Room 268 did not include an entry under debtors' name; neither did the water lien books filed in Room 262 contain an index of property owners. As of the petition filing date these water lien books were not labeled so as to advise the public that they were a part of the judgment index.

Also maintained in Room 262 is a set of books labeled the "Locality Index." The locality index consists of four sets of books, each set covering a five year period; thus, the locality index spans a total of twenty years. Like the water lien books (see Debtors' Memorandum of Law at 6), this index is organized by the street address of each liened property. It indexes all mechanics' liens as well as certain municipal claims (such as real estate transfer liens and select water liens) for cases in which the City has determined it has a need to record expeditiously the lien for its claim. The locality index generally does not include the city's water liens, and the subject lien was not indexed in the locality index.

Room 262 further contains a set of computer terminals. The terminals are able to access the account records of the City's Water Revenue Bureau and the water accounts of each real property in the City.[4] The terminals are available for use by the public. The evidence did not show that, as of the date of the bankruptcy filing, there were notices in either Room 262 or 268 advising the public that the terminals constitute part of either the judgment or locality index.

Finally, the parties stipulate that, if the subject lien is a judicial lien, it impairs an

---

**3.** The City also asserts a $537.06, non-priority claim.

**4.** Testimony showed that, at one time, the City was providing the Prothonotary with, approximately, ninety municipal lien books each year. As the Prothonotary found itself short of space

it allowed the City to provide its information on computer tapes. The parties' Fact Stipulation does not address (and trial testimony did not illuminate) how these accounts are indexed online (that is, what sort of access a computer terminal user has to docketed lien information).

exemption to which debtor Lester McLean would be entitled under 11 U.S.C. § 522(b).

## II.

The first issue I shall address is whether the City had perfected its lien against the debtors' property prepetition. If the lien was not so perfected then, pursuant to 11 U.S.C. § 522(g), (h) the debtors may be able to avoid this lien by using the trustee's powers found in §§ 544(a)(3) and 545(2), unless 11 U.S.C. § 546(b) applies. *See In re Aikens*, 94 B.R. 869 (Bankr.E.D.Pa.1989) (Scholl, B.J.) (*Aikens III*).

The parties had attempted to structure this litigation so that the only issue before me was whether the lien was a judicial lien or a statutory lien.[5] If the lien were classified as statutory, it would not be subject to avoidance under 11 U.S.C. § 522(f)(1). *In re Aikens*, 87 B.R. 350 (Bankr.E.D.Pa.1988) (*Aikens II*); *In re Townsend*, 27 B.R. 22 (Bankr.M.D.Pa.1982). *See also In re Donahue*, 862 F.2d 259, 266 n. 11 (10th Cir. 1988) (an equitable lien may not be a judicial lien and thus would not be subject to avoidance under § 522(f)(1)).

I appreciate that this classification question may be significant, particularly to the City, but in light of the Third Circuit Court of Appeals recent decision in *Ransom v. Marrazzo*, 848 F.2d 398 (3d Cir.1988), and in light of the *Aikens* trilogy which involved the same legal questions as presented here, *In re Aikens*, 83 B.R. 344 (Bankr. E.D.Pa.1988) (*Aikens I*); *Aikens II*; *Ai-*

*kens III*, it seemed more appropriate to direct the parties to address the issue of lien perfection. The outcome of this question may obviate any need for a classification decision, as an unperfected lien may be subject to the trustee's strong arm powers. *Aikens III.* *See In re Pierce*, 809 F.2d 1356 (8th Cir.1987); *Sommers v. International Business Machines*, 640 F.2d 686 (5th Cir.1981).[6]

### A.

The Municipal Claims and Lien Act, 53 P.S. §§ 7101 *et seq.*, is a complex state statute that authorizes municipal liens and claims and establishes the procedures by which claims are filed, enforced, collected, or set-off. The Act also describes how judgment may be entered and executed upon, and how liens and claims may be renewed or revived. In short, it is by reference to this state law that the question of perfection shall be answered.

Section 7106(b) of title 53 establishes that any municipal claim[7] imposed by Philadelphia, the only city in Pennsylvania of the first class, "shall be a lien only against the said property after the lien has been docketed by the Prothonotary. The docketing of the lien shall be given the effect of a judgment against the said property only with respect to which the claim is filed as a lien. The prothonotary shall enter the claim in the judgment index." 53 P.S. § 7106(b).[8] This language, added by Act

---

5. The Bankruptcy Code recognizes three types of liens: judicial, statutory and consensual. H.R.Rep. No. 95–595, 1st Sess. at 312 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5963, 6269.

6. Conversely, if the lien had been duly perfected and cannot be avoided for lack of perfection, then classification of the lien becomes important.

7. § 7101 defines "municipal claim" to include claims for water and sewer charges.

8. Section 7146 of this title requires the prothonotary to keep a "locality index," "in which shall be entered all tax or municipal claims hereafter filed, and, upon any written order therefore, [the prothonotary] shall give a certificate of search, showing all the claims filed against any property." Debtors do not suggest that entry in

this index is essential to achieve perfection. *But see Apollo Borough v. Clepper*, 44 Pa.Super. 396, 404 (1910) (discussing the requirement of keeping a locality index, and stating that "the provision requiring that a locality index shall be kept by the prothonotary is of no greater but of just as much significance as the provisions in section 26, in requiring the claim, verdict and judgment to be docketed in the mechanics' lien docket and in the judgment index of the court"); *Lancaster City v. Foehl*, 21 Pa.D. 858 (Lanc.1912) (plaintiff's tax lien filed in municipal lien docket, indexed in said docket and general docket but not in either the mechanics' lien docket or entered in a locality index; defendant's name improperly indexed and thus unlocatable, coupled with lack of locality index, would allow subsequent purchaser to take clear of the lien). *See generally Pennsylvania Municipal Claims and Tax Liens*, L. Hecht (Supp.1988).

1963, Aug. 1, P.L. 439, § 1, is shown by its legislative history to have been passed in order to shorten the time in which a municipal claim in Philadelphia was enforceable.

Prior to 1963, when 53 P.S. § 7106(b) was added, all municipal claims (including those of Philadelphia) made use of the *writ of scire facias sur municipal claim.* This writ was "used to enforce payment of a municipal claim out of the real estate upon which such claim is a lien." *Fox Chapel Sanitary Authority v. Abbott,* 34 Pa. Cmwlth 637, 384 A.2d 1012, 1013 n. 1 (1978). *See also City of Scranton v. Hurst,* 54 Lacka.J. 121 (C.P.1953). Before the writ could issue, the lien claim had to be filed and indexed; the writ would then have to be issued timely, and served properly. The record owner or other interested parties could then file an affidavit of defense which would then be determined before *in rem* enforcement was permitted. This process could be quite time consuming. *See, e.g., Forks Twp. Mun. Sewer Auth. v. American Land, Inc.,* 6 Pa. Cmwlth. 569, 297 A.2d 185 (1974); *Bridgeport Nat'l Bank v. McCausland Motors, Inc.,* 27 D. & C.2d 589 (C.P.Chest.1961).

The process by which federal tax liens were enforced was considerably simpler. Notice of assessment was issued, followed by the filing of the lien claim with the appropriate county official. *See* 26 U.S.C. §§ 6361, 6323(a), (f); *United States v. Code Products Corp.,* 216 F.Supp. 281 (E.D.Pa. 1963).

Due to principles of federalism, whatever priority a state chose to accord municipal liens with respect to prior perfected liens held by private individuals would not be binding upon the federal government absent congressional consent. *United States v. City of New Britain,* 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954). It was established law that the relative priorities of municipal liens and federal tax liens were to be determined by the principle: "'the first in time is the first in right.'" *Id.,* at 85, 74 S.Ct., at 370 (citing *Rankin v. Scott,* 12 Wheat. 177, 6 L.Ed. 592 (1827)). The "first in time" refers to time of perfection. *Id.; Littlestown Nat'l Bank v. Penn Tile Works Co.,* 352 Pa. 238, 42 A.2d 606 (1945). Federal tax liens which arose after municipal liens but were perfected prior to them under state law therefore obtained priority against the liened real estate. *See United States v. Code Products Corp.,* 216 F.Supp. at 285; *Bridgeport Nat'l Bank v. McCausland Motors, Inc.,* 27 D. & C.2d at 605–607. *See also In re Dunne Trucking Co.,* 32 B.R. 182 (Bankr.N.D.Iowa 1983); *In re Barry,* 31 B.R. 683 (Bankr.S.D.Ohio 1983).

Philadelphia legislators, representing the Commonwealth's only city of the first class, pressed for an amendment so that assessed municipal liens could obtain priority over subsequently assessed federal liens. In order to achieve this result, it was necessary to eliminate the use of the *scire facias* writ, at least in Philadelphia:

> The rule of Federal common law is the general equitable principle, "first in time is the first in right." ... That test requires that a lien competing with one of the Federal government must be choate —*i.e.,* the identity of the lienor, of the property bound by the lien, and of the amount of the lien all must be certain.... *The last requirement, of course, is only met if there is no further opportunity for judicially contesting the amount of the lien. Thus, the lienor must either have obtained judgment on the lien or it must be enforcible [sic] against the property by summary proceeding.*

*In re Lehigh Valley Mills, Inc.,* 341 F.2d 398, 401 (3d Cir.1965) (citations omitted) (emphasis added). *Accord, e.g., United States v. Oswald & Hess Co.,* 345 F.2d 886 (3d Cir.1965); *United States v. Bond,* 279 F.2d 837, 841 (4th Cir.1960), *cert. denied,* 364 U.S. 895, 81 S.Ct. 220, 5 L.Ed.2d 189 (1960); *Bridgeport Nat'l Bank v. McCausland Motors, Inc.,* 27 D. & C.2d at 605.

As the bill proponents stated during the floor debate:

> The reason for the bill is actually very simple. Presently, when there is a tax lien filed by the city, this does not actually have the effect of a lien, because further proceedings are necessary, a writ

of scire facias, and it may take some time before the scire facias proceedings are complete so as the lien will properly attach to the property.

. . . .

In other words, Mr. Speaker, if this bill is adopted it will accomplish the following: It will give priority to city liens over federal liens entered after city liens in the distribution of process of judicial scires.

Pa.Legislative Journal–House, March 20, 1963, p. 358 (statement of Rep. Eilberg).

Further, one of the bill's sponsors opined: "I would say that the main thrust of this legislation is merely to advance the time somewhat when this lien becomes complete, for the purpose of preventing the intervening liens, especially by the Federal Government." *Id.*, at 360 (statement of Rep. A.M. Lee).[9]

### B.

11 U.S.C. §§ 544(a)(3) and 545(2) allow the bankruptcy trustee to invalidate unperfected or improperly perfected prepetition liens, including statutory liens, by asserting the rights of a hypothetical *bona fide* purchaser. *See, e.g., In re Pierce; In re Fulton Air Service, Inc.,* 777 F.2d 1521 (11th Cir.1985); *In re Loretto Winery,*

*Ltd.,* 81 B.R. 573 (9th Cir.B.A.P.1987). The debtor may utilize these trustee powers pursuant to 11 U.S.C. § 522(g), (h) so long as the lien was involuntary and impairs the debtor's interest in property which the debtor may exempt. *See generally Lee v. Schweiker,* 739 F.2d 870 (3d Cir.1984); *Deel Rent–A–Car, Inc. v. Levine,* 721 F.2d 750 (11th Cir.1983). There is no legitimate dispute that the relevant provisions of subsections 522(g) and (h) apply.[10] Thus, the first question is whether the City's lien for water and sewer charges was properly perfected prepetition.

In analyzing this question, I will accept *arguendo* the principles enumerated in *Aikens III, In re Townsend,* and *In re Taylor,* 17 B.R. 586 (Bankr.W.D.Pa.1982), that the municipal lien arises at the time of assessment, rather than upon the date of its indexing by the court clerk, or the entry of judgment for execution purposes. *Accord Ransom v. Marrazzo.* Such a conclusion was clearly correct prior to the 1963 amendments to § 7106 of the Municipal Liens Act, *see, e.g., Township of Lower Merion v. Manning,* 95 Pa.Super. 322 (1928), and that result was not intended to be changed by the amending legislation.[11]

Nonetheless, it was also true that prior to the 1963 amendment (as well as afterward) the failure of the municipality to properly index, file timely, or revive the

---

**9.** Debtors argue that statements made on the floor of the legislature may not be used as an aid in statutory construction. Debtors' Reply Memorandum of Law at 3, n. 2. While floor debate is not recognized by Pennsylvania courts as being authoritative as legislative history, *see Commonwealth v. Alcoa Properties, Inc.,* 440 Pa. 42, 46 n. 1, 269 A.2d 748 (1970), courts will at least take note of it as an expression of the legislators' concern at the time of consideration. *Crawl v. Pennsylvania Housing Fin. Agency,* 98 Pa. Cmwlth 431, n. 7, 511 A.2d 924 (1986). *Cf.* 1 Pa.C.S.A. § 1939 (comments of "commission, committee, association or other entity which drafted a statute may be consulted" in construing its ambiguous provisions). *See also Simpson v. United States,* 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978) (remarks on the floor of the House not dispositive of legislative intent, but entitled to weight "coming as they do from the provision's sponsor"); *Gartner v. Soloner,* 384 F.2d 348, 353 (3d Cir.1967), *cert. denied,* 390 U.S. 1040, 88 S.Ct. 1633, 20 L.Ed.2d 302 (1968) ("In attempting to extract the legislative purpose

primary concern should always be given to the views expressed by the sponsors of the bill . . .").

**10.** The City stipulated that its lien was asserted against the debtors' interest in property which may be exempt. It argued, weakly, that the lien arose from their failure to pay their water and sewer bills and thus was not "involuntary." This position was correctly and quickly rejected in *Aikens III,* 94 B.R. at 872–73 and cases cited. If the City's position were accepted, it would be difficult to envision an "involuntary" lien.

**11.** Of course, the debtors focus upon the following statutory phrase in § 7106(b): "shall be a lien only against said property *after* the lien has been docketed by the prothonotary." (emphasis added). Decisions such as *Manning* and *United States v. Oswald & Hess Co.,* 225 F.Supp. 607, 609 (W.D.Pa.1964), *rev'd on other grounds,* 345 F.2d 886 (3d Cir.1965), rely upon the language of § 3 of 1923, May 15, P.L. 207, which is substantially restated in current § 7106(a), but not in subsection (b).

lien caused it to be divested as to a prior *bona fide* purchaser. *Sanft v. Borough of West Grove,* 63 Pa. Cmwlth 366, 437 A.2d 1332 (1981) (failure to file lien timely); *Sewer Authority of City of Scranton v. Arnold,* 35 Pa. Cmwlth 262, 385 A.2d 1034 (1978) (failure to revive lien timely); *Blairsville v. Donatelli,* 123 Pa.Super. 51 186 A. 247 (1936) (failure to record lien properly); *Apollo Borough v. Clepper* (failure to index properly); *Lancaster City v. Foehl,* 21 Pa.D. 858 (Lanc.1912) (failure to index properly). As the Third Circuit noted:

> We find that the [municipal] liens are not rendered invalid by improper indexing as against any of the plaintiffs because under section 7432 of title 53 of the Pennsylvania Statutes liens can be filed or, where improperly filed, refiled at any time except as against bona fide purchasers and mortgagees to whom property is transferred prior to perfection.

*Ransom v. Marrazzo,* 848 F.2d at 405 (footnote omitted).[12]

Therefore, even if the municipal lien arises at the time of assessment, it is clear that it is not perfected until properly recorded. Neither the language of § 7106(b) nor its purpose—to make it enforceable by summary procedure—alters that conclusion.[13] As the City has failed to comply with the docketing requirements established by the Municipal Lien Act prior to the debtors' bankruptcy filing, its lien was unperfected as of that date. *Accord Ransom v. Marrazzo; Aikens III.*

### III.

■ The City argues, essentially, that the indexing which it undertakes, given its space needs, meets the spirit if not the letter of the state docketing requirements set out in § 7106(b). I disagree.

**12.** *Accord Erie City v. Willis,* 26 Pa.Super. 459 (1904) (improper indexing does not invalidate municipal lien unless third party interests are implicated).

**13.** Given the effect of constructive notice upon the trustee's "strong arm" powers under 11 U.S.C. § 544(a), *McCannon v. Marston,* 679 F.2d 13

It is well established that a strict rule of construction is applied to statutes dealing with actions on municipal claims, as they are in derogation of the common law. *Philadelphia, Use of Montgomery Paving Co. v. Egolf,* 314 Pa. 216, 171 A. 604 (1934); *Philadelphia, Use of Vulcanite Paving Co. v. Cooper,* 212 Pa. 306, 61 A. 926 (1905); *City of Scranton v. Arnold.* Thus, strict compliance with the statutory scheme is required to achieve perfection. *See, e.g., Aikens I; Dickson City v. Senkosky,* 162 Pa.Super. 612, 60 A.2d 545 (1948); *Houser v. Childs,* 129 Pa.Super. 565, 196 A. 547 (1938). The obtaining of a complete lien against another's property without suit or prior opportunity for that person to appear and defend, as is the case under § 7106(b), is an extraordinary remedy, and can be had only in the manner set forth in the statute upon which the right is founded. *Associated Bldg. Contractors v. Lantz,* 59 Dauph. 217 (C.P.1948). *But see United States v. Beaver Run Coal Co.,* 99 F.2d 610, 612 (3d Cir.1938) (lien extends only to persons covered and conditions created by statute, and then only where there has been at least a substantial compliance with all the statutory requirements).

At best, the City's procedure served as the functional equivalent of the locality index, required by section 7146. But the statute in § 7106(b) expressly refers to the judgment index for Philadelphia municipal liens, an index established by name of the individual rather than by property address. *See Aikens III,* 94 B.R. at 875; 49 C.J.S. Judgments 900 (1947). *Cf. Penn Title Ins. Co. v. Intercounty Abstract, Ltd.,* 31 Pa. D. & C.3d 635 (1984) (the requirement only of "indexing" without specifying "judgment index" allows flexibility in filing). Thus, the statute refers to two methods of notice for cities of the first class.

(3d Cir.1982), a distinction should be drawn between perfection of the lien, for purposes of sections 544 and 545, and enforceability of the lien. The purpose of § 7106(b) was to have perfection and enforceability occur as of the time of recordation.

Philadelphia, perhaps for legitimate reasons,[14] does not utilize the judgment index or its alphabetical listing method. However, as the Pennsylvania Superior Court held many years ago, when discussing the statutory imposition of a new index, the locality index, the legislature has set forth constructive notice provisions it deems a necessary and important part of the statutory whole. *Apollo Borough v. Clepper,* 44 Pa.Super. at 406. It is for the legislature, not this court, to relieve the municipalities of recording requirements if they have proven too onerous. *Cf. In re Ryan,* 851 F.2d 502 (1st Cir.1988) (bankruptcy court is not free to ignore state law requirement that a deed must be signed by two witnesses). As the City has not utilized the judgment index, its recordation of its municipal lien is not properly perfected. *Aikens III. See Ransom v. Marrazzo.*

### IV.

█ The City also notes that the rights of a trustee (or debtor) under §§ 544 and 545 are subject to the provisions of 11 U.S.C. § 546(b).[15] The effect of this subsection, along with 11 U.S.C. § 362(b)(3), is to allow a creditor to perfect its lien postpetition, and prevent the trustee from avoiding the unperfected lien, if applicable non-bankruptcy law (generally state law, *but see In re Alberto,* 823 F.2d 712 (3d Cir.1987) (reference to federal non-bankruptcy law to resolve dispute involving a ship's mortgage)), permits a subsequent perfection which would relate back to the bankruptcy filing, *viz.,* bind a *bona fide* purchaser who takes just prior to the commencement of the bankruptcy case. *See*

*Maryland Nat'l Bank v. Baltimore,* 723 F.2d 1138 (4th Cir.1983); *In re Nicholson,* 57 B.R. 672 (Bankr.D.Nev.1986); *In re Saberman,* 3 B.R. 316 (Bankr.N.D.Ill. (1980); 4 *Collier on Bankruptcy* ¶ 546.03 (15th ed. 1988). Thus, the question becomes whether the Pennsylvania Municipal Lien Act permits a later perfected municipal lien to achieve priority over an intervening *bona fide* purchaser. If not, then § 546(b) does not apply. *See In re Oxford Royal Mushroom Products, Inc.,* 40 B.R. 930 (Bankr.E.D.Pa.1984) (under Pennsylvania law, the type of mechanics' lien held by the debtor does not relate back). If it does relate back, and if the City either has taken steps to perfect postpetition (which would not violate the automatic stay, 11 U.S.C. § 362(b)(3)), or still has the right under state law to perfect, *see Ransom v. Marrazzo,* then it cannot be avoided. *Maryland Nat'l Bank v. Baltimore* (real estate property taxes relate back under state law).[16]

The only decisions discussing whether Philadelphia municipal liens may, upon perfection, relate back to the time of assessment are *Ransom* and *Aikens III. Ransom* concluded, in dictum, that an intervening *bona fide* purchaser would take ahead of an improperly recorded Philadelphia municipal lien; *Aikens III* agreed.

Relevant state court decisions refer to municipal liens other than those from Philadelphia, and either predate the 1963 amendment to § 7106 or do not consider it. For example, both *United States v. Oswald & Hess Co.* and *Township of Lower Merion v. Manning* conclude, with reference to the 1923 municipal lien statute, that the liens relate back. Neither decision,

---

**14.** There was no evidence presented to establish the efficacy of the constructive notice provided by the City's form of indexing. Thus, I cannot determine if it is as effective as filing in the judgment and locality indexes together would be.

**15.** This subsection states:

(b) The rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of

such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action has not been commenced before the date of the filing of the petition, such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement.

**16.** The City took certain actions, involving labeling books and posting signs, which it argues serves to perfect its municipal liens. As these actions all took place postpetition, they do not affect the analysis.

though, addressed the priority of a *bona fide* purchaser. The former decision considered the priority of a prior recorded mortgage by the Small Business Administration and concluded that state law afforded priority to a later filed timely municipal lien, to the extent the municipal lien was assessed prior to the recordation of the mortgage. The *Manning* decision concerned a dispute between the original homeowner and the municipality over the proceeds of a foreclosure sale.

As noted above, though, other decisions have acknowledged the primacy of a good faith purchaser over an improperly filed or revived lien. *Sanft v. Borough of West Grove; Sewer Authority City of Scranton v. Arnold; Blairsville v. Donatelli; Lancaster Corp. v. Foehl.* Perhaps the decision most apposite is *Apollo Borough v. Clepper.* There the lien was indexed, under a slightly erroneous name, in the mechanics' lien docket rather than the locality index or municipal lien docket. Subsequently, the real property was sold to a good faith purchaser who was later notified of the municipal claim. Relying upon general principles of notice and priority, the Pennsylvania Superior Court concluded that the failure to properly index the municipal lien deprived it of force vis-a-vis the innocent purchaser.

Section 7106(a) refers to the primacy of municipal liens at judicial sales over "any other obligation, judgment claim, lien or estate...." Given that this subsection does not refer to good faith purchasers, that the statute is to be strictly construed, that relevant state court interpretations of the statute support the debtors' construction, and that the Third Circuit has interpreted state decisional law to protect the interests of *bona fide* purchasers from subsequently perfected municipal claims, I find that the provisions of subsection 546(b) do not protect the City's lien from avoidance.

### V.

■ The City's final defense is raised in its posttrial memorandum of law,[17] that it qualifies as a good faith transferee pursuant to 11 U.S.C. § 550(d) and, therefore, is entitled to a lien on the subject real property for the cost of improvement or preservation of the property. In its posttrial memorandum, the City argues in full on this point at p. 19 that "[t]he supply of water/sewer services to debtors' property has contributed to the value and preservation of the property so as to justify same." The City's invocation of this section of the Bankruptcy Code is misplaced.

Section 550(d) provides that the divested lienholder retains a lien for the cost it incurred for any improvement made to the property after the avoided transfer. *In re Morris Communications NC, Inc.,* 75 B.R. 619, 629 (Bankr.W.D.N.C.1987); 11 U.S.C. § 550(d)(1)(A). *See, e.g., Black & White Cattle Co.,* 783 F.2d 1454, 1461–62 (9th Cir.1986) (good faith transferee of an avoided transfer may be entitled to improvement lien in the amount the property, heads of cattle, increased in value as a result of expenditures for care and feeding); *In re Brown Family Farms, Inc.,* 80 B.R. 404, 414 (Bankr.N.D.Ohio 1987) (good faith purchasers of farmland entitled to an "offset" for improvements made after purchase, including payment of property taxes and satisfaction of first mortgage); *In re General Industries, Inc.,* 79 B.R. 124 (Bankr.D. Mass.1987) (payment of real estate taxes caused increase in value of property equal to the amount paid; roof repair increased value to the extent of one-half of cost of repair). Here, however, the City took no action which resulted in a "windfall addition" to the debtors' estate. 4 *Collier on Bankruptcy* ¶ 550.04 at 550–14 (15th ed. 1988). *See also In re Amato,* 10 B.R. 120, 123 (Bankr.S.D.Fla.1981).

The City's failure to properly index the lien resulted in the lien's avoidance. The City may not now resurrect its lien by showing that there was consideration for its imposition. The services for which the City seeks a § 550(d) improvement lien were provided prior to the creation of the

---

**17.** I note that a defendant's failure to raise this issue as a counterclaim in an answer filed with the bankruptcy court has been held as untimely and not properly raised, and therefore denied.

*In re Vedaa,* 49 B.R. 409, 411–412 (Bankr.D.N.D. 1985). The debtors have not objected on this ground, and I do not pass upon it.

lien being avoided under §§ 544(a)(3) and 545(2). The City may not re-establish its defective lien by merely showing that there was consideration for the imposition of the lien in the first place. *Aikens III*, 94 B.R. at 875. Such a result would practically render nugatory the avoidance provisions of improperly perfected liens pursuant to §§ 544(a)(3) and 545(2). Thus, I find the provisions of § 550(d) to be inapplicable in the instant case.

In sum, I find that the City's improperly perfected lien on these debtors' water bills are avoided, and that the provisions of §§ 546(b) and 550(d) are not available to the City. An appropriate order shall be entered.

## ORDER

AND NOW, this 20 day of March, 1989, upon consideration and for the reasons stated in the accompanying Memorandum Opinion, it is hereby ORDERED that the City of Philadelphia's unperfected water lien No. 36805, C.P. Philadelphia, November Term, 1987, is AVOIDED.