Jay GRAFFEN; Cass Graffen

v.

CITY OF PHILADELPHIA,

Jay & Cass Graffen, Appellants.

No. 92–1418.

United States Court of Appeals, Third Circuit.

Argued Dec. 3, 1992.

Decided Dec. 28, 1992.

Cynthia E. White (argued), Divisional Deputy City Sol., Philadelphia, PA, for appellee.

Alan M. White (argued), Community Legal Services, Philadelphia, PA, for appellants.

Before: SLOVITER, Chief Judge, and GREENBERG and SEITZ, Circuit Judges.

OPINION OF THE COURT

GREENBERG, Circuit Judge.

## I. BACKGROUND

■ Jay Graffen and Kathleen Graffen appeal from an order entered in the district court on May 12, 1992, 149 B.R. 90, on an appeal from the bankruptcy court in this adversary proceeding. We have jurisdiction under 28 U.S.C. § 158(d). Inasmuch as we are deciding this appeal through the application of legal precepts we exercise plenary review. *Lerman v. Commissioner*, 939 F.2d 44, 46 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 590, 116 L.Ed.2d 615 (1991).

The case is a sequel to *McLean v. City of Philadelphia*, 891 F.2d 474 (3d Cir.1989). In *McLean*, we held that when the City filed water liens solely in the water lien books, it did not comply with Pa.Stat.Ann. tit. 53, § 7106(b) (1972) ("section 7106(b)"), which required such liens to be docketed in the judgment index, as the water lien books were not part of that index. Accordingly, we held that a trustee acting under 11 U.S.C. § 544(a)(3), and thus the debtors in *McLean* acting under 11 U.S.C. § 522(h), could avoid liens filed only in the water lien books because they had not been perfected before the commencement of the bankruptcy proceedings.

While we acknowledged that the City might have thought that the water lien books were part of the judgment index, this made no difference because "at the time the debtors commenced their bankruptcy actions, a reasonably intelligent searcher would have had little chance of discovering any of the water liens involved." 891 F.2d at 478. We reached this conclusion because the Philadelphia prothonotary maintains two indices at the City Hall in which most City liens are recorded, the judgment index itself, which is the main set of lien books, and a locality index which lists most of the City's liens. 891 F.2d at 475–76.[1] *See, e.g., In re McLean,*

---

1. While our opinion in *McLean* indicates that these two indices were kept in Room 262, 891 F.2d at 475, we believe that it should have recited that the judgment index was kept in

97 B.R. 789, 791 (Bankr.E.D.Pa.1989). Nevertheless, the City had not posted a notice that the water and sewerage liens would not be found in either of those two indices. *McLean,* 891 F.2d at 478. We also observed that the City had not posted a notice that a computer terminal, which was available for use by the public and was connected to the accounting records of the Water Revenue Bureau, was part of the indexing system. This was significant because those records gave access to the water lien information. *Id.* Yet our holding, though granting the debtors relief, was quite narrow for we recognized that the problems were simply mechanical; thus, we observed "the defect in the indexing system is one which appears to be easily remediable by the Prothonotary." 891 F.2d at 480.

The proceedings now before us demonstrate that even before December 7, 1989, when we filed our opinion in *McLean,* the prothonotary had remedied the defect in the lien perfection process identified in *McLean.* When the Graffens filed their Chapter 13 petition on July 26, 1988, they owned a property at 3249 Potter Street, Philadelphia, against which the City had filed a lien for delinquent water charges of $560.48. In addition, the City had an unsecured claim against the Graffens for water bills of $324.76. The water lien was filed in a water lien book kept in Room 262 in the City Hall which, prior to the filing of the Graffens' Chapter 13 petition, but after the filing of the petitions by the debtors in *McLean,* had been labeled the "Water/Sewer in Rem Judgment Index." The locality index was also kept in Room 262 and there was a sign above the door of that room reciting "Liens." The computer terminals connected to the Water Revenue Bureau

continued to be in Room 262 as they were when the debtors in *McLean* filed their bankruptcy petitions.

By the time the Graffens filed their petition, in addition to the labeling of the water lien books described above, there was another difference in the lien perfection system from when the debtors in *McLean* filed their petitions. In that interval the prothonotary had posted a sign in Room 268, where the judgment index is kept, indicating that the Water/Sewer In Rem Judgment Index containing water/sewer liens is in Room 262. Thus, it is undisputed that when the Graffens filed their Chapter 13 petition the City's lien was on file in a book in Room 262 labeled "Water/Sewer In Rem Judgment Index" and that a sign in Room 268, where the judgment index is kept, referred searchers to that index for water liens.[2]

Notwithstanding the changes in the prothonotary's office procedures, the Graffens brought this adversary proceeding in the bankruptcy court seeking to avoid the City's lien. The Graffens urged, as had other debtors who petitioned in bankruptcy before the prothonotary made the changes we have described, that the City's lien was not perfected. In addition, the Graffens contended that the City's lien is a judicial lien which they may avoid under 11 U.S.C. § 522(f). The bankruptcy court ruled in the Graffens' favor, primarily on the authority of its opinion in *In re Aikens,* 94 B.R. 869 (Bankr.E.D.Pa.), *aff'd,* 100 B.R. 729 (E.D.Pa.), *aff'd sub nom. McLean v. City of Philadelphia,* 891 F.2d 474 (3d Cir.1989), which stated that the City's action in posting the sign had not validated the water liens.[3]

Room 268 and the locality index and water lien books were kept in Room 262. The parties in this case have stipulated to this breakdown, and it appears in other opinions. *See In re McLean,* 97 B.R. 789, 791 (Bankr.E.D.Pa.1989). Of course, the room numbers are not important in themselves; what has been treated as significant is that the water lien books were not kept in the same room as the judgment index.

**2.** On May 5, 1988, when the debtors in *In re McLean,* 97 B.R. 789 (Bankr.E.D.Pa.1989), filed their petition, the water lien books had not been

labeled as the Water/Sewer in Rem Judgment Index and the sign had not been posted. Inasmuch as the Graffens filed their petition on July 26, 1988, the labeling and posting must have taken place between these dates.

**3.** While *In re Aikens* did state that the posting of the sign was not a sufficient measure to perfect liens filed in the water lien books, 94 B.R. at 874–75, this conclusion was obviously dictum as the petition in *Aikens* was filed before the sign was posted.

The City appealed to the district court which reversed the bankruptcy court's order. The district court held that the City's lien was statutory.[4] Furthermore, it indicated that the Graffens were not in the position of bona fide purchasers for they had actual knowledge of the City's claim as they had been billed for water and sewer service for which they had not paid. The court also held that in view of the changes in the prothonotary's office which we have described, the filing system gave adequate notice of the City's lien.

The Graffens have appealed to this court, raising two issues. First, they contend that they may avoid the City's water lien under 11 U.S.C. §§ 544(a)(3) and 545(2) because a bona fide purchaser would not be bound by the filing as the lien was not perfected under Pennsylvania law. Second, they contend that the lien can be avoided as a judicial lien under 11 U.S.C. § 522(f). We will affirm the order of the district court.

## II. DISCUSSION

### 1. *The City's lien is perfected.*

■ Assuming for the moment that the City's water lien is statutory, rather than judicial, the Graffens may not avoid the lien if it was perfected to the extent that it could have been enforced against a bona fide purchaser when the Graffens filed their petition under Chapter 13. 11 U.S.C. §§ 544(a)(3), 545(2), and 522(h). We determine if the lien was so perfected by refer-

ence to state law. *McLean v. City of Philadelphia*, 891 F.2d at 476. Thus, unlike the district court, we will not predicate our result on the Graffens' actual knowledge of the City's claim for we do not doubt that the debtors in *McLean* had similar knowledge, and yet we held that they could avoid the lien.

■ We hold that the lien was perfected so that when the Graffens filed their petition under Chapter 13 it would have been enforceable against a bona fide purchaser. At that time[5] section 7106(b), applicable to Philadelphia as a city of the first class, provided:

> With the exception of those claims which have been assigned, any municipal claim, including interest, penalty and costs, imposed by a city of the first class, shall be a lien only against the said property after the lien has been docketed by the prothonotary. The docketing of the lien shall be given the effect of a judgment against the said property only with respect to which the claim is filed as a lien. The prothonotary shall enter the claim in the judgment index.

■ While we will accept the Graffens' contention that there must be strict compliance with the procedures in section 7106(b) for the perfection of a lien, there was strict compliance here. When the Graffens filed their petition under Chapter 13, nothing in section 7106(b) required the prothonotary to arrange the judgment index so that it would be composed of vol-

---

4. The Graffens assert that the district court "inexplicably did not address [their] alternative argument that they could avoid the liens under 11 U.S.C. § 522(f)." Brief at 20. This is simply not so for the district court rejected the argument when it indicated that "[t]he lien at issue has been held to be such a statutory lien." *Graffen v. City of Philadelphia*, 149 B.R. 90, 91 (E.D.Pa.1992). Of course, a lien cannot be both a judicial and statutory lien within the Bankruptcy Code. *See* 11 U.S.C. § 101(53).

5. Section 7106(b) was amended in 1990 to provide that the "prothonotary shall maintain an in rem index, the form and location of which shall be within the prothonotary's discretion. All tax claims, water rents or rates, lighting rates, power rates and sewer rates heretofore filed are hereby ratified, confirmed and made valid sub-

sisting liens as of the date of their original filing." 1991 Pa.Legis.Serv. Act No. 1990–199, § 1 (Purdon). There can be no doubt that if this section had been in effect when the Graffens filed their Chapter 13 petition their appeal to the extent predicated on the assumption that the City's lien is statutory would be frivolous. Thus, if we recognized that the amended section could be given retroactive effect under the avoidance sections in the Bankruptcy Code, our inquiry, except with respect to the Graffens' judicial lien argument, would be over. However, inasmuch as we are satisfied that the City's lien was properly perfected under section 7106(b) even prior to that section's 1990 amendment, we see no need to address the potentially difficult question of whether the amended section could be applied retroactively here.

umes containing all the items noted in the index in integrated lists. Furthermore, our research has not disclosed any other provision of Pennsylvania law compelling such an integration, nor have the Graffens directed our attention to any such provision. Though it would be reasonable to hold that each part of a divided index must be labeled as a "judgment index," or the equivalent, so that a searcher would recognize when he was dealing with that index, this was the situation here as the water lien books had been labeled the "Water/Sewer in Rem Judgment Index." Indeed, in principle it is difficult to distinguish for purposes of determining the prothonotary's authority between a division of the judgment index on the basis of the type of lien involved and a division predicated on the time of filing. Yet, we do not think that it would be contended seriously that a prothonotary could not break down an index chronologically. In the circumstances, we see no reason to conclude that Pennsylvania law requires the judgment index to be a single massive tome inclusive of everything which it could embrace.

We note that the prothonotary, by posting a sign in Room 268 reciting that the Water/Sewer In Rem Judgment Index containing water/sewer liens was in Room 262, took pains to ensure that a searcher would not be misled by the divided judgment index. Thus, we cannot fairly hold that as of the time of the Graffens' petition a reasonably intelligent searcher would have had little chance of discovering a water lien docketed in the prothonotary's office.[6] This circumstance distinguishes this case from *McLean* where we made such a

holding predicated on the procedures for lien perfection then in effect.

We also point out that the Pennsylvania legislature has not attempted to define the powers of the prothonotary in minute detail. *See* 42 Pa.Cons.Stat. § 2737 (1982). Thus, the Pennsylvania Supreme Court does not take a restrictive view of the implied powers of a prothonotary incident to the express duties of the office. *See Petticord v. Joyce,* 516 Pa. 35, 531 A.2d 1383 (1987); *cf. Kauffman's Appeal,* 70 Pa. 261 (1871) (holding that delivery of papers to prothonotary on Sunday for confession of judgments did not impair validity of judgments because prothonotary in receiving papers was not acting in official capacity). This observation leads us to believe that the Pennsylvania Supreme Court would be reluctant to find that a prothonotary exceeds the powers of his office simply because of his arrangement of the judgment index.

■ Finally, it is significant that in 1990 the Pennsylvania Legislature amended Section 7106(b) so that the prothonotary expressly was vested with discretion in determining the "form and location" of the the in rem index in which water liens were to be filed. 1991 Pa.Legis.Serv. Act No. 1990–199, § 1 (Purdon). While we do not suggest that the amendment can validate retroactively the arrangement of the judgment index, nevertheless in a situation in which prior law may be unclear it is appropriate to examine a later germane statute for aid in construing the earlier law. *Cf. In re Arens,* 41 N.J. 364, 197 A.2d 1 (1964)

---

6. The record does not reveal the actual practices of title searchers in Philadelphia. We note that the district court in *Booker v. City of Philadelphia,* 106 B.R. 381 (E.D.Pa.1989), a case in which the debtor filed his petition after the labeling of the water lien books as the Water/Sewer in Rem Judgment Index and the posting of the sign, reached a result contrary to that we reach here. We think, however, that *Booker* is of limited authority for two reasons. There was a jurisdictional defect in the district court for on further appeal to this court we ascertained that the appeal to the district court was untimely. We thus remanded the matter to the district court with instructions to vacate its decision and judgment and to dismiss the appeal.

*In re Booker,* No. 89–1846 (3d Cir. Feb. 20, 1990). Substantively the district court, though noting how the water lien books had been labeled, ignored that circumstance in deciding the case as it indicated that the "only issue before this court, then, is whether the posting of [the sign in Room 268 advising that the Water/Sewer In Rem Judgment Index is in Room 262] properly perfected the lien or, alternatively, constituted sufficiently constructive notice to satisfy the requirements of state law concerning entry and perfection of water and sewer liens." 106 B.R. at 383. This formulation of the issue ignored the critical point that the judgment index need not be an integration of all the items noted in it.

(court conforming the common law to later nonretroactive statute).

### 2. The City's lien is not a judicial lien.

■ We also reject the Graffens' second argument, that the lien may be avoided as judicial under 11 U.S.C. § 522(f). Section 522(f) provides that a debtor may avoid a judicial lien on the debtor's interest in property to the extent that it impairs an exemption to which the debtor would have been entitled under section 522(b). Here, however, even if the City's lien impairs such an exemption it is not judicial.

The Bankruptcy Code recognizes three types of liens: judicial, statutory, and consensual. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 312 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6269; *In re Mc-Lean*, 97 B.R. at 792 n. 5. As it is clear that the City's lien was not created consensually, it is either judicial or statutory. A judicial lien is "obtained by judgment, levy, sequestration or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). But there was no legal process or proceeding in this case. Those terms inherently relate to court procedures or perhaps similar administrative proceedings. While we do not doubt that in some circumstances a judicial proceeding may be *ex parte*,[7] here the Water Department administratively determined the amount of the lien. The prothonotary simply docketed the lien the Water Department delivered.

By contrast a statutory lien arises "solely by force of statute on specified circumstances or conditions." 11 U.S.C. § 101(53). We are satisfied that the lien here arose "solely by force of statute" as "Pennsylvania state law authorizes the City of Philadelphia to impose liens against property benefited by unpaid water and sewer service." *Ransom v. Marrazzo*, 848 F.2d 398, 404 (3d Cir.1988). While the record does not reveal how the City calculates the amount of its water charges, even if we

assume that the property owner must receive service for the property to be subject to the lien, this service simply would be a specified circumstance or condition to the lien arising. Accordingly such a requirement would be consistent with the definition of a statutory lien.

The Graffens support their position that the lien is judicial by contending that the City "has always conceded that its lien arises only upon filing, and not at the time water/sewer charges are assessed." Brief at 24. Thus, the City's claim is divided into a secured lien claim for $560.48 and an unsecured claim for $324.76. The bills accruing prior to the most recent lien filing are treated as liened, but the subsequent bills are not. The difficulty with this argument is that the City by dividing its claim simply recognized that to the extent that it has not complied with section 7106(b) the Graffens may avoid the claim even if characterized as a lien because it was not perfected against bona fide purchasers.

But that concession would not mean that the lien would not be valid as between the Graffens and the City even though it might not be perfected under section 7106(b). Of course, if it could be valid without perfection then the lien would not be obtained by judicial process even if docketing could be considered such a process. Therefore, it would not be a judicial lien within 11 U.S.C. § 101(36). There is support for that position as the bankruptcy court has indicated that the lien can be valid without docketing under 7106(b):

> The Court hence concludes that, even in Philadelphia, the filing is simply a means of the City's protecting the priority of its lien as to subsequent purchasers and lienors. Although a bona fide purchaser or one having such rights (like a bankruptcy trustee) may therefore be empowered to invalidate the effect of the lien, the plaintiffs in *Ransom*, who were not bona fide purchasers, and the Debtor

---

7. We have recognized that "a lien obtained by confessed judgment is a judicial lien avoidable under section 522(f)(1) of the Code, and not a security interest or a statutory lien." *Gardner v. Pennsylvania*, 685 F.2d 106, 108 (3d Cir.), *cert.*

*denied,* 459 U.S. 1092, 103 S.Ct. 580, 74 L.Ed.2d 939 (1982); *see also In re Ashe*, 712 F.2d 864, 865 (3d Cir.1983), *cert. denied,* 465 U.S. 1024, 104 S.Ct. 1279, 79 L.Ed.2d 683 (1984).

here, who is himself the delinquent ratepayer, are not empowered to do so. The lien, as to them, remains valid, and, as to them, fully enforceable despite defects in the docketing process.

*In re Aikens,* 87 B.R. 350, 353 (Bankr. E.D.Pa.1988).

In any event, even if as between the Graffens and the City the lien could not be enforceable without docketing by the prothonotary, our result would not be changed. In that circumstance the docketing simply would be a specified condition for creation of the statutory lien as defined in 11 U.S.C. § 101(53). The legislative history of the Bankruptcy Code, which demonstrates that mechanics' liens can be statutory, supports this conclusion. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 314 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6271. Inasmuch as at least in some states public filing is required to preserve mechanics' liens, there is no reason why the requirement that a water lien be docketed means that it cannot be statutory. *See, e.g.,* N.J.Stat.Ann. §§ 2A:44–71, 91 (West 1987); Pa.Stat.Ann. tit. 49, § 1502 (1965).

The Graffens seek to avoid our result by citing *Gardner v. Pennsylvania,* 685 F.2d 106 (3d Cir.), *cert. denied,* 459 U.S. 1092, 103 S.Ct. 580, 74 L.Ed.2d 939 (1982), and *In re Barbe,* 24 B.R. 739 (Bankr.M.D.Pa.1982). The Graffens contend that in those cases "the courts found that liens for reimbursement of public assistance and unemployment compensation, respectively, were judicial liens subject to avoidance by the debtor, because they were not created automatically." Brief at 23. These cases, however, do not support the Graffens' position because they do not stand for the proposition that liens requiring some administrative action to be perfected must be characterized as judicial liens. In *Gardner,* the liens were clearly judicial as they were judgments entered on confessions of judgment executed by the debtor. Under 11 U.S.C. § 101(36), a judgment is a judicial lien. In *Barbe* the bankruptcy court noted that it was holding that the "affirmative act of recording, *after the defendant's administrative adjudication,* of the debtor's

liability for overpayment, created a judicial lien." 24 B.R. at 740 (emphasis added). Thus, the bankruptcy court equated an administrative adjudicatory process to a judicial proceeding. That precedent, which in any event is not binding on us, is not helpful here as there was no such proceeding in this case.

In view of our conclusions, the order of May 12, 1992, will be affirmed.