**In re Daniel H. PHILLIPPY, Sr. and Halina A. Phillippy, a/k/a Halina A. Stryminski, Debtors.**

**Daniel H. PHILLIPPY, Sr. and Halina A. Phillippy, a/k/a Halina A. Stryminski, Movants,**

**v.**

**CORKSCREW WOODLANDS ASSOCIATES, INC., Respondent.**

**Bankruptcy No. 5–93–00905.**

United States Bankruptcy Court, M.D. Pennsylvania, Wilkes–Barre Division.

Oct. 7, 1994.

---

Edward M. Pulaski, Stroudsburg, PA, for debtors/movants.

Michael Whitt, Fort Myers, FL, for respondent.

### OPINION AND ORDER

JOHN J. THOMAS, Bankruptcy Judge.

The Debtors have filed a Chapter Seven bankruptcy and, in that bankruptcy, have filed a Motion to Avoid a Judicial Lien against the Respondent, Corkscrew Woodlands Associates, Inc. (hereinafter "Respondent"). The Debtors are the owners of a parcel of real estate situate in Estero, Flori-

da, the value of which is claimed to be Thirty–Eight Thousand Dollars ($38,000.00). Against that property is a mortgage in the amount of Thirty–Seven Thousand Two Hundred Dollars ($37,200.00) and a further encumbrance in favor of the Respondent in the amount of Two Thousand Three Hundred Forty–One and 59/100 ($2,341.59). The "claim of lien" held by the Respondent represents unpaid homeowner association assessments provided for in the Amended and Restated Declaration of Covenants, Conditions and Restrictions of Corkscrew Woodlands, a portion of which is attached to the pleadings.

■ The issue is simply stated: "Is the debt owing the association an avoidable judicial lien?"

Our analysis begins with 11 U.S.C. § 522(f) which states as follows:

### § 522. Exemptions.

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; ...

A judicial lien is defined by the Bankruptcy Code in Section 101(36) as a "... lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding;".

The lien of the association is founded on their Amended and Restated Declaration of Covenants, Conditions and Restrictions ("Covenants").

Paragraph 8.1 of the Covenants states as follows:

Types—Declarant has covenanted for each Unit within the Planned Development and each Owner of a Unit is hereby deemed to covenant by acceptance of the deed for such Unit, whether or not it shall be so expressed in the deed, to pay to the Association (1) annual assessments, (2) special assessments, (3) special capital improvement assessments, and (4) emergency assessments. Such assessments will be established and collected as hereinafter pro-

vided. All assessments authorized by these Declarations, together with interest, costs, late fees and reasonable attorneys' fees, shall be a charge on the land and a continuing lien on each Unit against which such an assessment is made. Each such assessment, together with interest, costs, late fees and reasonable attorneys' fees shall also be the personal obligation of the person or person who owned the Unit at the time the assessment fell due. Each Member expressly covenants by acceptance of the deed that liens may be placed against the Unit in the Planned Development for nonpayment of assessments.

Further, paragraph 8.3 of the Covenants addresses the question of Default in Payment of Assessments as stating as follows:

Default in Payment of Assessments—Assessments and installments thereof not paid within fifteen (15) days from the date when they are due shall bear interest at the highest lawful rate from the due date until paid. The Association has a lien on each Unit for any unpaid Assessments due on said Unit with interest and for reasonable attorneys' fees and costs incurred by the Association incident to the collection of the Assessments or enforcement of the lien. The lien is effective from and after recording a claim of lien in the Public Records of the County, stating the description of the Unit, the name of the record Owner, the amount(s) due, and the due date(s). The lien is in effect until all sums secured by it have been fully paid or until barred by law. The claim of lien includes Assessments which are due when the claim is recorded and all assessments, costs, attorney's fees accruing until the claim of lien is satisfied or foreclosed. A claim of lien shall be signed and acknowledged by an officer or agent of the Association. Upon payment, the person making the payment is entitled to a satisfaction of the lien. The Association may bring an action in its name to foreclose a lien for unpaid Assessments in the manner a mortgage of real property is foreclosed and may also bring an action at law to recover a money judgment for the unpaid Assessments without waiving any claim of lien.

A review of the nature of a lien can be found in the United States Bankruptcy Court for the Eastern District of Pennsylvania in *In re Griggs;* 12 B.R. 443 (Bkrtcy.E.D.Pa. 1981).

In making the analysis, the court stated:

"An examination of the legislative history of the Bankruptcy Reform Act clearly indicates that the terms 'judicial lien,' 'security interest,' and 'statutory lien' are to be mutually exclusive. Both House Report 95–595 and Senate Report 95–989 state:

In general, the concept of lien is divided into three kinds of liens: judicial liens, security interests, and statutory liens. Those three categories are mutually exclusive and are exhaustive except for certain common law liens. (emphasis added).

(1978) U.S.Code Cong. & Ad.News, 5787, 5881, 6229 . . . .

A security interest is defined in the Code as a 'lien created by agreement.' See, 11 U.S.C. § 101(37) (1979). This definition is an adaptation of a U.C.C. § 1–201(37) (1962 version) security interest.

Unlike the U.C.C. security interest, however, the Bankruptcy Code definition is broader in that it includes real estate security. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 313–14 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 26 (1978)." *In re Griggs, supra* at page 444.

The ability to avoid the lien accordingly turns on whether such a lien is judicial in nature or arises by reason of a security interest or lien created "by agreement".

■ Pennsylvania law certainly recognizes that members of an association are bound by an association's recorded Declaration of Covenants, Easements and Restrictions. *Wrenfield Homeowners Association, Inc. v. DeYoung,* 410 Pa.Super. 621, 600 A.2d 960 (1991).

■ Covenants will be examined and analyzed as would any contract such that "each and every part of it must be taken into consideration and given effect, if possible, and the intention of the parties must be ascertained from the entire instrument." *Wrenfield Homeowners Association, Inc. v.*

*DeYoung, Id.* at page 627 citing *Marcinak v. Southeastern Green School Dist.,* 375 Pa.Super. 486, 491, 544 A.2d 1025, 1027 (1988).

The Covenants state that "Each Member expressly covenants by acceptance of the deed that liens may be placed against the Unit in the Planned Development for non-payment of assessments".

This would imply that the lien was created by agreement and therefore represents a security interest and therefore not a judicial lien and not avoidable.

Notwithstanding the language of the Covenants, however, we have been instructed in various influential opinions that an agreement to create a security interest must be set forth in documents that "... would have to clearly evidence an intent by the parties to create a security interest in the property ...". The question becomes whether the lien against property is created by the contract or is it created by a legal proceeding. Cf. *In re Ashe,* 669 F.2d 105 (3rd Cir.1982).

The Covenants make clear that assessments, together with interests, costs, late fees and reasonable attorneys' fees, shall be "a continuing lien on each Unit against which such an assessment is made".

The Covenants continue on to state that "The Association has a lien on each Unit for any unpaid Assessments due on said Unit with interest and for reasonable attorneys' fees and costs incurred by the Association incident to the collection of the Assessments or enforcement of the lien. The lien is effective from and after recording a claim of lien in the Public Records of the County, stating the description of the Unit, the name of the record Owner, the amount(s) due, and the due date(s)." The key words are thus spelled out in the Covenants that "the lien agreed to by the parties is effective from and after recording". As stated in *In re Griggs, supra,* "A valid security interest is created by the contract or security agreement itself, and not recordation." *Id.* at page 445. In the case before us, the lien arose when the creditor recorded the claim of lien.

The question becomes whether the finding that the lien is not effective until recording in the proper county office is tantamount to the "legal proceeding" necessary in order the qualify as a judicial lien under 11 U.S.C. § 101(36).

The answer to that question has been provided by *Graffen v. City of Philadelphia,* 984 F.2d 91 (3rd Cir.1992). In finding that the docketing of a water lien with the prothonotary was neither legal process nor proceeding, the court stated that, "Those terms inherently relate to court procedures or perhaps similar administrative proceedings. While we do not doubt that in some circumstances a judicial proceeding may be ex parte, here the Water Department administratively determined the amount of the lien. The prothonotary simply docketed the lien the Water Department delivered." (footnote omitted.) *Id.* at page 96.

The court reconciled *Gardner v. Commonwealth of Pennsylvania, Dept. of Public Welfare,* 685 F.2d 106 (3rd Cir.1982), cert. denied 459 U.S. 1092, 103 S.Ct. 580, 74 L.Ed.2d 939 (1982). The *Gardner* court concluded that the filing of a confession of judgment executed by the debtor was a judicial lien. The *Graffen* court simply concluded that by definition a judgment is a judicial lien.

Furthermore, the circuit in *Graffen* reconciled the holding in *In re Barbe,* 24 B.R. 739 (Bkrtcy.M.D.Pa.1982) which concluded that a lien arising because of overpayment of unemployment compensation was a judicial lien by suggesting that the lien in *Barbe* was preceded by an "administrative adjudicatory process" tantamount to a judicial proceeding. *Graffen v. City of Philadelphia, supra* at page 97.

In the case before us, we have neither a judgment nor an administrative adjudicatory process to support the argument that a judicial lien was created by the recordation of the lien. We simply have a document recorded in the proper county office evidencing a lien as tacitly agreed to by the Debtor when he purchased the property in question.

For these reasons, the Debtor's Motion to Avoid Judicial Lien is denied.