In re William S. BRAXTON and Linda Ann Braxton, Debtors.

William S. BRAXTON and Linda, Ann Braxton, Plaintiffs,

v.

BUREAU OF UNEMPLOYMENT COMPENSATION BENEFITS AND ALLOWANCES and Gary J. Gaertner, Trustee, Defendants.

Bankruptcy No. 97–10493.
Adversary No. 97–1041.

United States Bankruptcy Court,
W.D. Pennsylvania.

Sept. 10, 1998.

Michael J. Graml, Erie, PA, for Debtors.

Jayne C. Shinko, Harrisburg, PA, for Bureau of Unemployment Compensation Benefits and Allowances.

Gary J. Gaertner, Pittsburgh, PA, Chapter 13 Trustee.

*OPINION*

WARREN W. BENTZ, Bankruptcy Judge.

*Introduction*

On April 4, 1997, William S. Braxton and Linda Ann Braxton ("Debtors") filed a voluntary Petition under Chapter 13 of the Bankruptcy Code. On March 3, 1997, the Bureau of Unemployment Compensation Benefits and Allowances ("BUC") filed with the Prothonotary of the Court of Common Pleas of Erie County, Pennsylvania, a CERTIFIED COPY OF LIEN which provides:

TO THE PROTHONOTARY OF SAID COURT:

Pursuant to 43 P.S. §§ 874(a) and 788.1, this is a Certified Copy of Lien for overpaid unemployment compensation benefits and interest to be entered of record by you and indexed as judgments are indexed.

Debtors seek to avoid the lien pursuant to 11 U.S.C. § 522(h) and 547(b). BUC denies that it has received a preference and denies that the Debtor's property is exempt from BUC's lien.

BUC further alleges that its claim against the Debtors is nondischargeable; that its lien is not avoidable under 11 U.S.C. § 522(c)(2); that it holds a statutory lien which cannot be

avoided under 11 U.S.C. § 522(f) or § 545; and that BUC enjoys sovereign immunity and is immune from suits of this type in federal courts. The parties have filed a Stipulation of Facts. There are no material facts in dispute and this matter is ripe for decision.

### Stipulated Facts

1. BUC is an agency of the Commonwealth of Pennsylvania.

2. BUC administers the qualification and payment of unemployment compensation benefits to eligible former employees.

3. On or around December 5, 1995, BUC, through findings of fact, made a determination that Debtor received a fault overpayment of unemployment compensation benefits in the amount of $5,035.00 pursuant to 43 P.S. § 874.

4. BUC issued a NOTICE OF DETERMINATION ("Notice") dated December 5, 1995 that is maintained in the Debtor's claim file in BUC's possession and custody. The Notice states that Debtor knowingly failed to report earnings and thus a FAULT overpayment of $5,055 had occurred.

5. No appeal was taken from this Notice although the Debtor could have filed an administrative appeal of the determination.

6. BUC filed a criminal complaint against Debtor on January 2, 1996 alleging a summary violation of 43 P.S. § 871(a) based on false statements made to obtain unemployment compensation benefits.

7. Defendant was found guilty by a district magistrate on January 29, 1996, which verdict included an order to make restitution in the amount of $5,055.00, and ordered to make restitution by payment of $50 per month beginning March 15, 1996.

8. No appeal was taken from this verdict and/or sentence to the Court of Common Pleas.

9. On March 3, 1997, BUC filed a lien against Debtor to the use of the Unemployment Compensation Fund in the amount of $5,585.74 plus costs, which lien was docketed to No. 30283-1997 in Erie County, pursuant to 43 P.S. § 788.1. Said lien attaches to Debtor's real and personal property from the date it is entered of record.

10. No consent, adversarial process, or hearing was held in Common Pleas Court of Erie County prior to the entry of this lien.

11. No challenge or objection was filed to the entry of this lien prior to the inception of the bankruptcy.

12. Debtor's Chapter 13 petition was filed April 4, 1997.

13. Debtor holds title to realty valued at approximately $76,000.00 as of the petition date, which is subject to two mortgages valued at approximately $64,500.00 as of the petition date.

### Discussion

■ If a transfer is avoidable by the trustee under § 547 and the trustee does not attempt to avoid such transfer, the debtor may step into the shoes of the trustee to avoid a transfer to the extent that the debtor could have exempted such property if the trustee had avoided the transfer. 11 U.S.C. § 522(h).

BUC's lien impairs an exemption in the Debtor's residence, thus the Debtor is entitled to bring this action under § 547.

■ Under § 547 of the Bankruptcy Code, "[t]he trustee may not avoid ... a transfer ... that is the fixing of a statutory lien that is not avoidable under section 545 of the title." 11 U.S.C. § 547(c)(6).

§ 545 applies to liens that first became effective upon the bankruptcy or insolvency of the debtor or are not enforceable on the date of the petition against a bona fide purchaser. BUC's lien became effective and was filed of record prior to the bankruptcy filing. Thus, § 545 is inapplicable. If BUC's lien is a statutory lien, it is not avoidable.

■ Debtor asserts that BUC's lien is a judicial lien subject to avoidance while BUC asserts that it holds a statutory lien. The Bankruptcy Code recognizes three types of liens: judicial, statutory, and consensual. H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 312 (1977) *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6269; *Graffen v. City of Philadel-*

*phia,* 984 F.2d 91, 96 (3d Cir.1992). Both the Debtors and BUC agree that BUC's lien is not consensual.

A "judicial lien" means a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). A "statutory lien" is defined at 11 U.S.C. § 101(53) as follows:

"(53) statutory lien" means lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.

11 U.S.C. § 101(53).

BUC's lien arises from the Pennsylvania Unemployment Compensation Law, 43 P.S. § 751 *et seq.* (Purdon's 1991).

43 P.S. § 874(a) provides:

§ 874. *Recovery and recoupment of compensation*

(a) Any person who by reason of his fault has received any sum as compensation under this act to which he was not entitled, shall be liable to repay to the Unemployment Compensation Fund to the credit of the Compensation Account a sum equal to the amount so received by him and interest at the rate determined by the Secretary of Revenue as provided by section 806 of the act of April 9, 1929 (P.L. 343, No. 176), known as "The Fiscal Code," per month or fraction of a month from fifteen (15) days after the Notice of Overpayment was issued until paid. Such sum shall be collectible (1) in the manner provided in section 308.1 or section 309 of this act [1], for the collection of past due contributions, or (2) by deduction from any future compensation payable to the claimant under this act. . . .

The Debtor in fact received compensation to which he was not entitled and is subject to this section and § 788.1.

43 P.S. § 788.1 provides:

§ 788.1 *Contributions to be liens; entry and enforcement thereof.*

(a) All contributions and the interest and penalties thereon due and payable by an employer under the provisions of this act shall be a lien upon the franchises and property, both real and personal, including after-acquired property of the employer liable therefor and shall attach thereto from the date a lien for such contributions, interest and penalties is entered of record in the manner hereinafter provided. The lien imposed hereunder shall have priority from the date of such entry of record and shall be fully paid and satisfied out of the proceeds of any judicial sale of property subject thereto, before any other obligation, judgment, claim, lien or estate to which said property may subsequently become subject, except costs of the sale and of the writ upon which the sale was made and real estate taxes and municipal claims against such property, but shall be subordinate to mortgages and other liens existing and duly recorded or entered of record prior to the recording of the tax lien. In the case of a judicial sale of property subject to a lien imposed hereunder, upon a lien or claim over which the lien imposed hereunder has priority, as aforesaid, such sale shall discharge the lien imposed hereunder by the extent only, that the proceeds are applied to its payment and such lien shall continue in full force and effect as to the balance remaining unpaid.

(b) The department may at any time transmit to the prothonotaries of the respective counties of the Commonwealth, to be by them entered of record and indexed as judgments are now indexed, certified copies of all liens imposed hereunder, upon which record it shall be lawful for writs of execution to be directly issued without the issuance and prosecution to judgment of writs of scire facias: Provided, That not less than ten (10) days before the issuance of any execution on the lien, notice of the filing and the effect of the lien shall be sent by registered or certified mail to the employer at his last known post office address. No prothonotary shall require as a

---

**1.** 43 P.S. §§ 788.1, 789.

condition precedent to the entry of such liens the payment of the costs incident thereto....

43 P.S. § 788.1 (Purdon's 1991) (footnote omitted).

In *Graffen v. City of Philadelphia*, 984 F.2d 91 (3d Cir.1992), the court determined that the claim of the City of Philadelphia against the debtors therein for water service was a statutory lien and therefore not subject to avoidance. The court stated:

> A judicial lien is "obtained by judgment, levy, sequestration or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). But there was no legal process or proceeding in this case. Those terms inherently relate to court procedures or perhaps similar administrative proceedings. While we do not doubt that in some circumstances a judicial proceeding may be ex parte, [FN7] here the Water Department administratively determined the amount of the lien. The prothonotary simply docketed the lien the Water Department delivered. FN7. We have recognized that "a lien obtained by confessed judgment is a judicial lien avoidable under section 522(f)(1) of the Code, and not a security interest or a statutory lien." *Gardner v. Pennsylvania*, 685 F.2d 106, 108 (3d Cir.) cert. denied, 459 U.S. 1092, 103 S.Ct. 580, 74 L.Ed.2d 939 (1982); *see also In re Ashe*, 712 F.2d 864, 865 (3d Cir.1983), cert. denied, 465 U.S. 1024, 104 S.Ct. 1279, 79 L.Ed.2d 683 (1984).

984 F.2d at 96.

Similarly, the BUC administratively determined the amount of the overpayment and entered the amounts in its files; it also entered the total amount on a form entitled CERTIFIED COPY OF LIEN, which it filed with the prothonotary. The prothonotary simply received and docketed the form. By force of statute, the amount due as shown on the form became a lien on Debtor's real and personal property.

In *Graffen*, the debtors sought to avoid a finding that the water lien was a statutory lien by citing *Gardner v. Pennsylvania*, 685 F.2d 106 (3d Cir.) *cert. denied* 459 U.S. 1092, 103 S.Ct. 580, 74 L.Ed.2d 939 (1982) and *In re Barbe*, 24 B.R. 739 (Bankr.M.D.Pa.1982).

The Debtors here also point to those cases for support. As stated in *Graffen:*

> The Graffens seek to avoid our result by citing *Gardner v. Pennsylvania*, 685 F.2d 106 (3d Cir.) cert. denied, 459 U.S. 1092, 103 S.Ct. 580, 74 L.Ed.2d 939 (1982), and *In re Barbe*, 24 B.R. 739 (Bankr.M.D.Pa. 1982). The Graffens contend that in those cases "the courts found that liens for reimbursement of public assistance and unemployment compensation, respectively, were judicial liens subject to avoidance by the debtor, because they were not created automatically." Brief at 23. These cases, however, do not support the Graffens' position because they do not stand for the proposition that liens requiring some administrative action to be perfected must be characterized as judicial liens. In *Gardner*, the liens were clearly judicial as they were judgments entered on confessions of judgment executed by the debtor. Under 11 U.S.C. § 101(36), a judgment is a judicial lien. In *Barbe* the bankruptcy court noted that it was holding that the "affirmative act of recording, after the defendant's administrative adjudication, of the debtor's liability for overpayment, created a judicial lien." 24 B.R. at 740 (emphasis added). Thus, the bankruptcy court equated an administrative adjudicatory process to a judicial proceeding. That precedent, which in any event is not binding on us, is not helpful here as there was no such proceeding in this case.

984 F.2d at 97.

*Barbe* seems to say (1) that a statutory lien can exist only when the statute in question "create(s) a lien automatically by its own force;" and (2) the act of recording created a judicial lien.

However, 11 U.S.C. § 101(53) states that " 'statutory lien' means lien arising solely by force of a statute *on specified circumstances or conditions.*" The words "on specified circumstances or conditions" cannot be ignored. Thus, a "statutory lien" need not arise solely from the statute; it arises on specific circumstances. In the case before us, the lien arises when BUC files a paper with the Prothonotary. BUC administratively deter-

mined Debtor's liability and entered that amount on a piece of paper; BUC then filed that piece of paper in the office of the Prothonotary. It was only by force of statute that the amount stated on that piece of paper became a lien on the obligor's property. There was no judicial intervention. The amount stated in the paper was not a judicial determination. The fact that the legislation stated that the paper should be filed in the office of the Prothonotary does not make it a "judgment," even though the Prothonotary also is the repository for judicial records.

We note also that under the state statute, the paper filed becomes a lien only if it is prepared and filed by BUC. A similar paper filed by any other party would not have affixed a lien.

The lien claim in question is not a judicial lien as defined in 11 U.S.C. § 101(53) because it does not arise from entry of a judgment nor from any levy, sequestration, or other legal or equitable process or proceeding. A "judgment" is a final determination by a court. Here, no court was involved. Nor are we dealing with a "levy" or a "sequestration." The notice filed was not a legal or equitable proceeding since no court of law or equity caused its filing nor caused it to become a lien.

*Collier on Bankruptcy,* 15th Ed., explains at ¶ 101.53:

> The essence of the definition in section 101(53) is the need or lack of it, for an agreement or judgment to create the lien. If the lien arises by force of statute, without any prior consent between the parties or judicial action, it will be deemed a statutory lien.
>
> . . .
>
> Good examples of statutory liens are: tax liens of the United States and local governments, mechanics liens, possessory liens of repairmen and garagemen, and liens for wages where granted by statute. A maritime lien is a statutory lien. Sewer authority's liens, mechanic's liens, and materialmen's liens are typically statutory liens arising through force of statute, and merely because they require some form of judicial filing for their perfection against other creditors or continued effectiveness, they

are not transformed into judicial liens. While the filing of the lien may determine whether it is perfected to the extent that it may not be avoided by the trustee under section 545, it does not transmute a statutory lien into a different kind of lien.

2 *Collier on Bankruptcy,* ¶ 101.53 (15th Ed. rev.1997).

United States Internal Revenue Service liens are valid statutory liens. *In re PDQ Copy Center, Inc.,* 26 B.R. 77 (Bankr.S.D.N.Y. 1982). No court has ventured the conclusion that an IRS Notice of Lien is a "judicial lien" simply because it is filed in the place where judgments are filed. *Barbe* seems to stand alone in its opinion that the filing of a notice of lien creates a judicial lien.

 The fact that the BUC lien is to be "entered of record" and "indexed as judgments are indexed," does not make it a judgment lien. That place of recording was designated by the statute as simply a convenient way of achieving public notice.

It is true that in the case before us, the Debtor *was* subjected to a judicial proceeding; but that proceeding was a criminal proceeding. The finding of the District Justice that the Debtor was guilty was not filed with the Prothonotary, and was not the basis of the lien here in question. That criminal proceeding was a separate event even though it arose out of the same factual background.

 Also, the lien here in question is not like the lien of a judgment. A judgment lien is a lien only on the judgment debtor's real property. A judgment debtor's personal property is subjected to a lien only when there has been a levy of execution. The lien in question, created by the filing and docketing of the BUC CERTIFIED COPY OF LIEN is imposed upon *both* real and personal property—by force of the statute, 43 P.S. § 788.1.

*In re Carolina Resort Motels, Inc.,* 51 B.R. 447, 450 (Bankr.D.S.C.1985), holds that a notice of tax lien filed by the IRS and notices of tax liens filed by the South Carolina Employment Security Commission, filed prepetition, created unavoidable statutory liens in favor of those two governmental agencies. While

the Pennsylvania statute seems not to refer to the amount due as a "tax," it is nevertheless a claim which has lien status under the statute from the time it is filed, and in that sense, is like the South Carolina statute and the Internal Revenue Code.

The BUC raises the issue of nondischargeability in its answer. While its claim is likely non-dischargeable under 11 U.S.C. § 1328(a)(3), we need not make that determination as it is not relevant to the lien issues presently before the court.

Similarly, having determined that the BUC's lien is a statutory lien which cannot be avoided by the Debtors, we need not reach the sovereign immunity issues raised by the BUC.