# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-31117

United States Court of Appeals
Fifth Circuit

**FILED**

July 13, 2015

Lyle W. Cayce
Clerk

In the Matter of:  TORRANCE TREMAYNE GREEN,

Debtor

--------------------------------

RIVERBEND CONDOMINIUM ASSOCIATION,

Appellant

v.

TORRANCE TREMAYNE GREEN,

Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before KING, SMITH, and ELROD, Circuit Judges.

PER CURIAM:

In this Chapter 13 bankruptcy case, the bankruptcy court held that the privilege created by La. Rev. Stat. § 9:1123.115(1) (2014) on a Louisiana condominium for all unpaid sums assessed by the condominium association against the condominium owner is a statutory lien (as distinguished from a security interest) and is therefore subject to bifurcation under 11 U.S.C. § 1322(b)(2).  The district court affirmed.  For the reasons given by the district

No. 14-31117

court in its Order and Reasons attached hereto, we affirm the district court's affirmance of the bankruptcy court's order.

AFFIRMED.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                    CIVIL ACTION

TORRANCE TREMAYNE GREEN                   NO. 13-5199

                                          SECTION H(4)

## ORDER AND REASONS

Before the Court is an appeal by Riverbend Condominium Association, Inc., from a decision of the United States Bankruptcy Court for the Eastern District of Louisiana. The decision of the bankruptcy court is AFFIRMED for the following reasons.

## BACKGROUND

The facts in this case are undisputed. Torrance Tremayne Green ("Debtor"), the debtor in bankruptcy, is the owner of a condominium in Riverbend Condominiums in New Orleans, Louisiana (the "Condominium"). The

1

Condominium is subject to the Louisiana Condominium Act (the "Act") and the Condominium Declaration of Riverbend Condominiums (the "Declaration"), which is recorded in the public records of Orleans Parish. The Declaration grants the Riverbend Condominium Association ("Riverbend" or "Creditor") the right to assess dues for the general maintenance of the complex and file a lien against condominium owners who become delinquent on those dues.[1] The Act includes a similar provision granting a condominium association a privilege for unpaid sums assessed by the association.[2]

Debtor fell behind on assessments owed to Riverbend. Subsequently, Riverbend filed a lien affidavit in the mortgage records of Orleans Parish and then obtained a default judgment against Debtor for $23,303.72.

After the judgment was obtained, Debtor filed Chapter 13 Bankruptcy. Riverbend filed a Proof of Claim in the bankruptcy proceeding and was recognized as a secured creditor by the Chapter 13 Trustee. Debtor filed a Motion to Avoid Riverbend's Lien on the grounds that after deducting the balance of the first mortgage and the Louisiana homestead exemption, there was only $8,000 left to which Riverbend's lien could attach.

The bankruptcy court bifurcated Riverbend's claim, finding that the $8,000 residual value in the Condominium constituted a secured claim, while the

---

[1] R. Doc. 40-2.

[2] La. Rev. Stat. § 9:1123.115 (1) (2014) ("The association shall have a privilege on a condominium parcel for all unpaid or accelerated sums assessed by the association, any fines or late fees in excess of two hundred fifty dollars, and interest thereon at the rate provided in the condominium declaration or, in the absence thereof, at the legal interest rate.").

2

remainder was unsecured.[3]  Riverbend filed a Motion for New Trial and, pursuant to 11 U.S.C. § 1322(b)(2), alleged that its claims could not be bifurcated because its lien is a security interest.  11 U.S.C. § 1322(b)(2) states that a bankruptcy plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence."  It is undisputed that the Condominium is Debtor's principal residence and thus, if Riverbend's lien is a security interest, it cannot be bifurcated pursuant to the anti-modification provision of 11 U.S.C. § 1322. On this matter of first impression in Louisiana law, the bankruptcy court held that Riverbend's lien is a statutory lien, not a consensual security interest, and thus the prohibition in 11 U.S.C. § 1322 does not apply.[4]  Riverbend appeals this holding and alleges that the bankruptcy court erred in finding that its lien is statutory.

## LEGAL STANDARD

Where a district court sits as an appellate court in a bankruptcy case, "[t]he bankruptcy court's findings of fact are reviewed under a clear error standard, while conclusions of law are reviewed *de novo*."[5]  There is no dispute as to the facts of this case.  Creditor seeks appeal on a singular legal issue: the classification of a condominium lien. Thus, this Court considers this appeal under a *de novo* standard of review.

---

[3] *In re Green*, 494 B.R. 231, 233 (Bankr. E.D. La. 2013).

[4] *Id.* at 235.

[5] *In re Amco Ins.*, 444 F.3d 690, 694 (5th Cir. 2006).

3

## LAW AND ANALYSIS

The classification of a condominium lien is an issue of first impression under Louisiana law. Pursuant to the Bankruptcy Code, there are three types of liens: (1) statutory liens, (2) judicial liens, and (3) security interests. A statutory lien is a lien that arises "solely by force of a statute on specified circumstances or conditions."[6] A "judicial lien" is a lien "obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding."[7] The term "security interest" means a lien that is "created by an agreement."[8] Riverbend alleges that the condominium lien in question is a security interest and thus cannot be bifurcated pursuant to the anti-modification provision; Debtor contends that the bankruptcy court was correct in finding that the condominium lien is a statutory lien, to which the anti-modification provision does not apply. This Court agrees with the bankruptcy court and holds that a condominium lien is a statutory lien.

In its appeal, Creditor asserts that the Fifth Circuit's decision in *Bartee v. Tara Colony Homeowners Association* is binding on this Court.[9] This decision, however, is clearly distinguishable from the issue at hand. In *Bartee*, the Fifth Circuit held that the anti-modification protection of § 1322(b)(2) cannot be invoked by a junior creditor whose lien is unsupported by *any* remaining value

---

[6] 11 U.S.C. § 101(53) (West 2014).

[7] *Id.* § 101(36).

[8] *Id.* § 101(51).

[9] *In re Bartee*, 212 F.3d 277 (5th Cir. 2000).

4

in the residence after satisfaction of the first mortgage.[10] This holding is not dispositive in this case because Riverbend's secured interest in the Condominium is supported by some remaining value. In *Bartee*, the junior creditor was also a homeowner's association that held a lien against the debtor's principal residence for annual assessments that he had failed to pay.[11] Despite this similarity, the Fifth Circuit did not address whether that lien was consensual or statutory—the critical issue in this case.

The root of the parties' disagreement stems from the fact that the authority by which Riverbend acquired a security interest in Debtor's condominium was present in both the law and the condominium declaration. Specifically, the Louisiana Condominium Act states that a condominium association "*shall* have a privilege on a condominium parcel for all unpaid or accelerated sums assessed by the association."[12] It further requires that in order to preserve the privilege, the association must file a claim of privilege in the mortgage records of the parish in which the condominium is located and must notify the delinquent owner by sworn detailed statement of its claim at least seven days prior to the filing.[13] This filing preserves the privilege for one year from the date of the filing, and the creditor must record a notice of filing of suit within that year to maintain the privilege.[14]

---

[10] *Id.* at 291, 295.

[11] *Id.* at 281.

[12] La. Rev. Stat. § 9:1123.115 (2014).

[13] *Id.*

[14] *Id.* § 9:1123.115(B).

5

Likewise, the Declaration states that:

> The unpaid portion of a Common Expense assessment which is delinquent . . . shall be secured by a privilege upon the Condominium Parcel of the delinquent Unit Owner after filing for record of a claim of Privilege . . . in the Mortgage Office for the Parish where the Condominium Property is located . . . . At least seven (7) days prior to filing such a Claim of Privilege, the Association shall serve . . . on the delinquent Unit Owner . . . a sworn detailed statement setting forth the [association's claim]. . . . The effect of recordation shall cease and the privilege preserved by this recordation shall be preempted unless a notice of filing suit . . . is recorded within one year . . . .[15]

The Declaration essentially repeats the law set forth in the Act. Creditor argues that by filing the Declaration into the mortgage records it has somehow transformed its statutory privilege into a consensual security interest. This Court disagrees for the following reasons.

Under Louisiana law, there are two types of security devices that pertain to immovable property: privileges and mortgages. The Declaration does not satisfy the creation requirements of either. The first, a "privilege," is a non-consensual device that arises as a matter of law.[16] The Louisiana Condominium Act grants a condominium association a special privilege in a debtor's

---

[15] R. Doc. 40-2.

[16] *Luneau v. Edwards*, 6 So. 24, 24 (1887) ("Under our laws, privileges arise from the nature of the act or contract as an effect of the law, and not as a result of the stipulations and consent of the parties."); *First Nat. Bank of Boston v. Beckwith Mach. Co.*, 650 So. 2d 1148, 1151 (La. 1995) ("[P]rivileges arise by operation of law. . . ."); Michael H. Rubin, *Ruminations on the Louisiana Private Works Act*, 58 LA. L. REV. 569, 572 (1998) ("Louisiana privileges are non-consensual security devices; that is, they do not arise by any contract between the parties but rather by operation of law."); JASON J. KILBORN, LOUISIANA SECURITY DEVICES: A PRECIS xix (2d. ed. 2012).

condominium for amounts owed to the association.[17]  A "privilege is a right, which the nature of a debt gives to a creditor, and which entitles him to be preferred before other creditors, even those who have mortgages."[18]  While the term "privilege" is unique to Louisiana law, it is synonymous with the term "statutory lien," which is used outside of Louisiana.[19]  "[A] privilege arises only if and to the extent the law says it does; the law must be express, and privileges are interpreted strictly against the claimant."[20]

In light of the legal nature of privileges, Creditor's attempt in the Declaration to give itself a privilege is ineffective. A privilege arises only by law and thus can never be created by the consent of the parties. The inclusion of the above quoted language in the Declaration could *not* have given Creditor a privilege. If the Louisiana Condominium Act did not expressly provide Creditor with a privilege in Debtor's Condominium for unpaid association fees, Creditor's attempt to take a secured interest in the Condominium based on privilege would have been ineffective.

Because the Declaration could not have given Creditor a privilege in the Condominium, the only other possibility is that it gave Creditor a mortgage, which is a consensual security interest in immovable property.[21]  In order to

---

[17] "Special privileges . . . extend only to specific movable or immovable property designated by the statute creating the privilege." JASON J. KILBORN, LOUISIANA SECURITY DEVICES: A PRECIS 104 (2d. ed. 2012). Here, the condominium unit.

[18] La. Civ. Code art. 3186 (2012).

[19] JASON J. KILBORN, LOUISIANA SECURITY DEVICES: A PRECIS 103 (2d. ed. 2012).

[20] *Id.* at 104.

[21] La. Civ. Code arts. 3284, 3286 (2012). Of course, a creditor could also have a non-consensual mortgage in immovable property, namely a legal or judicial mortgage, but neither

7

create a conventional mortgage, the parties must execute a written contract, which must be signed by the mortgagor, state the amount secured, and describe the immovable property.[22] Creditor has provided no evidence that any of the above occurred. Indeed, Creditor argues only that the Declaration became binding upon third parties when it was filed in the mortgage records and thus became binding upon Debtor when he purchased the Condominium. This is insufficient to create a consensual security interest. "Because of their very nature and function, security devices should be strictly construed."[23] An attempt to create a consensual security interest without any of the requisite requirements, especially the signature (and thus express consent) of the mortgagor, cannot be valid.

In short, the parallel inclusion of a reproduction of the Louisiana Condominium Act into the Declaration had no effect. In acquiring a secured interest in Debtor's property, Creditor was relying solely on the privilege granted to it by the Act. Indeed, it took all steps required by the Act to preserve that privilege, including filing a verified claim of privilege into the mortgage records in the parish where the Condominium is located and bringing suit within one year of filing. The fact that a creditor must take certain subsequent steps to preserve a privilege does not affect the fact that the privilege *arises* "solely by

---

is important here because neither would give Creditor a consensual security interest. *See id.* art. 3284 (stating that both a legal and judicial mortgage occur by law).

[22] *Id.* arts. 3287–88 (2012).

[23] *First Guar. Bank v. Alford*, 366 So. 2d 1299, 1304 (La. 1978) (quoting *Durham v. First Guar. Bank of Hammond*, 331 So. 2d 563, 565 (La. Ct. App. 1st Cir. 1976)) (internal quotations omitted).

8

force of a statute."[24]  Because a privilege arises as a matter of law, it is, by definition, a statutory lien.[25]  Thus, because Creditor's lien on Debtor's Condominium is based on the privilege granted to it by the Louisiana Condominium Act, it is a statutory lien.[26]  "[A] Louisiana privilege is *not a 'security interest.'*"[27]  Accordingly, the anti-modification provision of 11 U.S.C. § 1322 does not apply.  The bankruptcy court did not err in bifurcating Creditor's claim into secured and unsecured portions, and its decision is affirmed.

## CONCLUSION

The decision of the bankruptcy court is AFFIRMED.

New Orleans, Louisiana, this 12th day of September, 2014.

JANE TRICHE MILAZZO
**UNITED STATES DISTRICT JUDGE**

---

[24] 11 U.S.C. § 101(53) (West 2014).

[25] "The term 'statutory lien' means lien arising solely by force of a statute on specified circumstances or conditions . . . ." *Id.*

[26] This Court's decision is in accord with the holdings of other courts interpreting the laws of other states. *See Young v. 1200 Buena Vista Condominiums,* 477 B.R. 594, 602 (W.D. Pa. 2012); *In re Johnson,* 108 B.R. 81, 82 (Bankr. W.D. Pa. 1989); *In re Stern,* 44 B.R. 15, 18 (Bankr. D. Mass. 1984). *But see In re Phillippy,* 178 B.R. 67, 70 (Bankr. M.D. Pa. 1994); *In re Bland,* 91 B.R. 421, 422 (Bankr. N.D. Ohio 1988).

[27] *First Nat. Bank of Boston,* 650 So. 2d at 1151 (emphasis added).

9